THE STATE, USE OF A. G. DELMAS, GUARDIAN, ETC., *v.* FANNIE A. COX ET AL.

1. GUARDIAN. *Sale of ward's land. Confirmation. Purchase-money.*
   Until confirmation of a sale of a ward's land, made by his guardian under an order of the chancery court, the guardian has no legal authority to receive the purchase-money of the land, and if he does so he holds it merely as the depositary of the purchaser.

2. SAME. *Purchase-money before confirmation of sale. Liability of sureties on guardian's bond.*
   And if before such confirmation the sureties on the guardian's original bond be released and a new bond be taken, they are not liable after confirmation of the sale for the purchase-money received by the guardian before confirmation, even though at the time of its reception they had not been released from their bond.

3. SAME. *Special bond under § 1221, Code 1871. Effect on general bond.*
   The special bond provided for in § 1221 of the Code of 1871, in case the guardian was ordered to sell land belonging to his ward, did not supersede the general guardian's bond, but both were a security for the money arising from such sale. *State, use, etc.,* v. *Hull,* 53 Miss. 626.

APPEAL from the Circuit Court of Jackson County.

HON. S. H. TERRAL, Judge.

On the 27th of January, 1876, Fannie A. Blake, now Fannie A. Cox, was appointed guardian of certain minors, and gave bond with Walter Denny and S. S. Henry as her sureties. On the 6th of September, 1876, she obtained an order of the court of chancery for the sale of certain real estate belonging to her wards, and, as required by § 1221 of the Code of 1871, gave "an additional bond

and security faithfully to account for the proceeds of sale," P. K. Mayers and J. B. Delmas being the sureties on this bond. The guardian sold the land and received the purchase-money, which in October or November, 1876, was deposited at interest by her in the Brandon Savings Bank. Denny and Henry, the sureties on her general guardian's bond, having learned that Mrs. Blake intended to deposit such purchase-money in the Brandon Savings Bank, on the 25th of September, 1876, filed a petition asking to be relieved from liability on that bond. The court made an order requiring the guardian to give a new bond, and on the 8th of January, 1877, she gave a new bond, with P. K. Mayers and M. A. Dees as her sureties.

In March, 1877, the chancery court confirmed the sale of the land made by the guardian, but adjudged that the deposit of the purchase-money in the Brandon Savings Bank was unauthorized by law, and ordered that the guardian stand charged with the principal of and interest on such money. About eighteen months after the deposit of the money the Brandon Savings Bank failed and the money was lost, except the interest thereon for one year collected by the guardian.

On the 5th of November, 1883, this action was brought in the name of the State, for the use of A. G. Delmas as guardian of the minors above alluded to (he having succeeded Mrs. Cox in that capacity), against Fannie A. Cox, former guardian, and Walter Denny and S. S. Henry, the sureties on her first bond, to recover thereon for the money placed by Mrs. Cox in the Brandon Savings Bank and lost by the failure thereof. Denny and Henry by proper pleadings presented two defenses to the action—first, that the taking of the special bond under § 1221 of the code relieved them from any liability for the proceeds of the sale thus specially provided for ; and, secondly, that they had been released from the obligations of the bond sued on, and a new bond had been taken before any liability accrued against Mrs. Blake, the then guardian, on account of the proceeds of such sale.

The verdict and judgment were in favor of the defendants, and the plaintiff appealed to this court.

*T. W. Brame*, for the appellant.

The bond given under § 1221 of the Code of 1871 was simply additional security, and was only given to be an additional protection to the wards. The proof of this being the intention of the legislative mind is shown by the wording of the statute of 1857, page 443, arts. 150 and 151, when it was left in the discretion of the court to require said bond only in the event it was deemed necessary; and, further, if it was the legislative intent that this bond should cover the proceeds and interest exclusive of the general bond, it seems that the statute would have been worded as it is in reference to administrators and executors in § 1197, Code 1871. Now clearly this bond under this last section is liable for the misapplication of the proceeds of a sale made by the administrator or executor, and not the general administration bond. Besides, they give a general bond only for the personal estate, while the guardian gives a bond to cover all the property, real and personal. Code 1871, §§ 1206, 1214.

If the general bond is sufficient in penalty to cover the loss accruing to plaintiffs, then they can hold that bond liable; if not, then they can hold both bonds liable. The bond under § 1221 is simply additional or cumulative. 52 Miss. 235.

If the court entertains, then, the view that the bond under § 1221 is not liable until the remedy against the general bond is exhausted, and that the bond under § 1221 is merely additional security, when did the liability of defendants, Denny and Henry, cease? Not until the 8th day of January, 1877; and if this money was deposited in the Brandon Bank before that date, then this was an act without authority of law; and whereas loss accrued to plaintiffs thereby, certainly the condition was known and the bond was forfeited, and it was the duty of these obligors to see that said money was withdrawn from deposit in said bank and paid into court, just as much so as if the guardian had used this money herself; and before they can successfully defeat this action and place the responsibility on the new bond given with Mayers and M. A. Dees as sureties, they must show that said guardian recovered said money from said bank. The act of depositing the money was

wrongful and a breach of the guardian's bond that was the cause of the loss, even if said bank continued to do business twelve months thereafter.    See Vivian & Otis, 1 American Reports 199.

C. H. Wood and T. S. Ford, for Denny and Henry, two of the appellees.

The sureties on the general bond of a guardian are not responsible for the failure of the guardian to account for money received from the real estate of the ward or its misapplication by him.  Such sale is no part of his general duties.    Minor v. Wilson, Hopk. (N. Y.) 512; Williams v. Morton, 38 Me. 47; Henderson v. Coover, 4 Nev. 429 ; Lyman v. Conkey, 1 Metc. 317 (Mass.); 5 Ind. 350; 23 Ind. 609 ; 47 Ind. 310.

Where the real estate of a minor is sold under an order of the orphans' court the original sureties of the guardian are not liable for the failure of the guardian to pay over the proceeds of sale. Blauser v. Diehl, 90 Pa. St. 350; 51 Iowa 152; 11 Cush. 22; Fay v. Taylor, 11 Metc. 529.

The precise question presented to the court in this case has never, so far as we can discover, been submitted to the supreme court of this State.    With statutes on this subject identical in effect with ours, it has been uniformly held in the States of Maine, Massachusetts, New York, Pennsylvania, Indiana, Iowa, and Nevada that the securities on the general bond of the guardian are not liable for the proceeds of real estate belonging to ward sold by the guardian under special decree of the court requiring the execution of a bond for the faithful application of the proceeds.    In these States it is held that the sureties on the general bond are not liable, even after the sale has been confirmed, and the funds arising from the sale of realty are mingled with other funds in the hands of the guardian, but that the special security taken to protect this fund continues in force until the final account is rendered by the guardian.

The sale in this case was not perfected till confirmation by the court.    Until it was approved by the Chancellor the money constituting the proceeds was not strictly the property of the wards. The land was theirs, and they could have by their proper repre-

sentative brought ejectment up to the time the sale was ratified by the court. The guardian up to the date of the decree of confirmation was merely a stakeholder, so far as the price was concerned. The money did not, in fact, belong to the wards until March, 1877, nearly sixty days after—by the giving of the new bond—Henry and Denny had ceased to be liable.

CAMPBELL, J., delivered the opinion of the court.

The right result was reached in this case. ° The new bond which the guardian gave by order of the court, on the application of the sureties on the first bond, was approved on the 8th January, 1877, and from that time forth the sureties on the first bond were not answerable for the conduct of the guardian. The sale she had made of lands of her wards was reported to and confirmed by the court at its March term, 1877. It is true the purchase-money of the land sold had been paid to her and by her loaned before the new bond was given, but until the confirmation of the sale by the court she had no legal authority to receive it, and held it as the mere depositary of the payer of the money, and when the court confirmed the sale the new bond had been given and the sureties on the former bond were not liable for the money, to which until then she had no legal right. *Coulter* v. *Herrod,* 27 Miss. 685.

The court was advised of the disposition the guardian had made of the money and disapproved it as being unauthorized by law, but confirmed the sale, and thereby validated her receipt of the purchase-money, but did this in view of the new bond which had been given. If the first bond had not before this been discharged as to the future by the new one, this action on the old one would have been maintainable. We do not assent to the view that the special bond given under § 1221 of the Code of 1871 was the only security for the dealing by the guardian with the proceeds of the land. That bond was additional to the other, and both were a security for the money arising from the sale of the land. *State, use, etc.,* v. *Hull,* 53 Miss. 626.

*Affirmed.*