SETH P. POOL v. JESSE ELLIS ET AL.

1. ADMINISTRATOR'S SALE. *Payment of purchase-money before confirmation. Misappropriation by administrator. Whose loss.*

   The purchaser of land at an administrator's sale is under no legal obligation to pay for the same until the sale has been confirmed by the court, and if before such confirmation he pay the administrator, who afterward misappropriates the money, as against the estate, the loss must be borne by the purchaser.

2. SAME. *Misappropriation of purchase-money. Relief against estate. Subrogation.*

   And in such case if the administrator use the purchase-money in payment of debts of the estate, the full measure of the purchaser's relief against the estate is to be subrogated to the rights of the creditors whose debts have been paid with his money, as the same existed before payment of the debts.

3. SAME. *Misappropriation of purchase-money. Subrogation to rights of administrator as creditor.*

   And if in such case the administrator after receiving the purchase-money appropriated funds of the estate to his own use, the purchaser cannot as against the estate be subrogated to the rights of the administrator as an individual creditor of the estate, until the debts due from the intestate to the administrator have been first applied to the liquidation of the claims of the estate against the administrator for the funds misappropriated.

4. SAME. *Purchaser in possession before confirmation. Purchase of tax-title. Rights as equitable mortgagee.*

   And if in such case the purchaser go into possession of the land before a confirmation of the sale and use and occupy it, he cannot acquire a tax-title thereto, because if regarded as an equitable mortgagee in possession a purchase by him of the land at a tax sale will be treated as the payment of a common charge made for the benefit of the whole estate.

5. ADMINISTRATOR'S SALE. *Purchaser in possession before confirmation. Purchase of tax-title. Rights as intruder.*

    But, if such purchaser be regarded as a mere intruder in possession of land and receiving the yearly rents and profits thereof, which exceed in amount the taxes due thereon, he could not, as against the owner, acquire a title by a purchase at a sale for taxes. His purchase will be treated as a payment of such taxes. *Gaskins* v. *Blake*, 27 Miss. 675, cited. And it is immaterial, in such case, when the intruder went into possession, if he became liable for rents and profits in excess of the price paid for the tax-title before the expiration of the period allowed for redemption.

6. SAME. *Disability to purchase at tax sale. Special statute of limitations.*

    Disability to purchase at a tax sale carries with it the disability to invoke the special statute of limitation provided for the protection of those who hold as purchasers at tax sales. *McGee* v. *Holmes*, 63 Miss. 50, cited.

7. LIMITATION OF ACTIONS. *Against executor or administrator after declaration of insolvency. Effect of decree of insolvency.*

    Since the adoption of the Code of 1857 there has been no statute prohibiting a creditor to institute suit against an executor or administrator who has taken steps to have the estate of the testator or intestate declared insolvent. But as a decree of insolvency prevents creditors from suing, it operates to suspend the running of the statute of limitations upon their demands.

APPEAL from the Chancery Court of Clay County.

HON. F. A. CRITZ, Chancellor.

Alfred Ellis died intestate in October, 1866. On December 10, 1866, Thomas S. Ellis was appointed administrator of his estate. On April 30, 1867, there were duly registered and probated certain claims of Seth P. Pool against the estate of Alfred Ellis, all of which claims were then past due. On September 9, 1869, the administrator presented his petition to the probate court, and asked that the estate be declared insolvent, which was duly done by a decree of the chancery court on November 2, 1872. Accordingly, the lands of the estate were ordered by the court to be sold, and on December 1, 1872, the administrator sold certain of these lands in accordance with its direction in two tracts, each tract containing more than one hundred and sixty acres, the purchase-money to be paid one-half cash and balance one year thereafter. Seth P. Pool became the purchaser of both tracts for one thousand five hundred and forty-five dollars and fifty cents,

paying to the administrator seven hundred and sixty-eight dollars and sixty-five cents cash, and on January 3, 1873, the further sum of six hundred and eighty-eight dollars and sixteen cents, five hundred dollars of which the administrator used in paying a debt against the estate, and the balance he wasted or used for his personal benefit.

Soon afterward, Pool and·the administrator having become convinced that this sale was void, agreed that another sale should be had, and that no conveyance of the lands under the first sale should be made. On December 29, 1873, the lands were again sold in tracts not exceeding one hundred and sixty acres, and Pool again became the purchaser for two thousand and forty-three dollars and twenty-five cents. It was understood between the administrator and Pool that the amount, one thousand four hundred and fifty-six dollars and eighty-two cents, paid the former for the lands on the first sale, should be credited on this second purchase. This sale was regular in all respects, and was duly reported by the administrator, but neither sale was ever confirmed by the court.

After this second sale Pool went into possession of the land, but whether it was in 1874 or 1875 is a matter in dispute. On March 1, 1875, Pool bought the lands in question at a sale of the same for the taxes of 1874, and certainly was soon afterward in possession thereof, and remained in possession to the institution of this suit.

On August 19, 1880, Jesse Ellis and others, heirs of Alfred Ellis, deceased, brought an action of ejectment against Pool to recover possession of these lands. Thereupon Seth P. Pool exhibited his bill in the chancery court against the plaintiffs in ejectment, in which he set out the above facts, and offered to pay whatever sum was due on his purchase, and prayed that the title to the lands bought by him, complainant, at the administrator's sale, be divested out of all of said heirs of Alfred Ellis, deceased, and vested in a commissioner, who shall convey the same to complainant; that the tax-title of complainant be confirmed and quieted, and that the plaintiffs in the ejectment suit be perpetually enjoined from all attempts to invalidate the title of complainant. The bill further prays that if the title derived from the purchase at the ad-

ministrator's sales or at the tax sale, or either of them, should be declared void, that complainant be granted a lien on the lands for the purchase-money paid by him to the administrator, and for general relief.

The Chancellor decreed that the first sale was void because in violation of § 18, art. xii, of the constitution; that complainant was entitled to a deed by virtue of the second. administrator's sale on the payment of the price; that the tax sale and the title derived therefrom was void because, as to a part, the assessment and deed are uncertain, and because of an excessive levy, and because the complainant, Pool, being in possession of these lands under a contract of purchase, was bound to pay the taxes due thereon, and could get no right whatever by a purchase from the tax collector.    The court ordered that an account be stated between Pool and the estate of Alfred Ellis, deceased, directing that Pool be charged with the amount, two thousand and forty-three dollars and twenty-five cents, his bid for the lands purchased at the second administrator's sale ; that he be credited with five hundred dollars, that being the amount of the purchase-money paid by Pool to the administrator, which had been used by the latter in paying a debt of the estate, and also that he be credited with several of the claims held by him against the estate, and probated as above stated, and also that he be credited with a certain judgment of E. B. Gaston against the estate of Alfred Ellis, deceased, which was rendered on June 20, 1870, and assigned to Pool on August 24, 1881 ; that he be charged with rents on the land and credited with improvements thereon. The court also ordered that an account be stated between the administrator and the estate, and that the interest of Thos. S. Ellis, administrator and heir of the estate of Alfred Ellis, still due after charging him with the funds of the estate wasted by him, and crediting him with the debts due him from the intestate, be subjected to the payment of that part of the purchase-money wasted or used by said administrator for his own personal benefit.    Upon this basis of calculation Pool was found to be indebted to the estate in the sum of two thousand one hundred and fifty dollars and ninety-one cents, which was ordered to be paid to the defendants,

heirs of Alfred Ellis. The Chancellor found as a fact that the administrator had wasted or used for his own benefit all the available assets of the estate before Pool made any payment on his first purchase of the land. From the decree herein the complainant appealed.

*Barry & .Beckett,* for the appellant.

1. The first sale by the administrator was held void under § 18, art. xii, of the constitution, which provides that "all lands held in pursuance of decrees of courts on execution shall be divided into tracts not to exceed one hundred and sixty acres." But that was disregarding § 16, art. vi, which provides that the chancery courts shall have "FULL jurisdiction in all matters of equity and in matters testamentary and of administration."

2. If the tax levy was excessive it cannot be shown. It is provided that "no suit shall be commenced in any court of this State to invalidate any tax-title to lands after three years from the time said lands were sold for taxes." Code 1871, § 1709.

The defendants *did commence* their action of ejectment for this purpose, and this bill enjoins them. There are decisions to the effect that where a party, *in or out* of possession, is allowed to file a bill to remove clouds that this statute commences from the date of sale. We had such a statute. Code 1871, § 975; Cooley on Taxation 348–350.

But to avoid any doubt on this point, the bill shows and the proof shows that Pool went into possession *immediately after* his purchase in 1876, and has remained in possession ever since. Yet the court holds that we are not protected by this statute. There is no conflict at all in the decisions that it protects us after three years from the time of taking possession.

But the court below seeks to avoid it by finding, first, that we were in possession at the sale, and therefore, could not buy, and, second, that the deed is void for ambiguity. The court below seemed to suppose that the principle of the case of *McGee* v. *Holmes,* 63 Miss., applied. But the ground of that decision was, that the tenant "owed the duty of discharging the taxes for which the sale was made." 63 Miss. 53.

And it is laid down by the authorities that in order to make out a disqualification to purchase at a tax sale that possession is not sufficient, nor is possession under a void deed nor a void deed without possession nor any other thing, *except an obligation to pay the taxes.* *Branson* v. *Yancy,* 1 Dev. Eqty. 77, 82 ; *Curtis* v. *Smith,* 42 Iowa 665 ; *Link* v. *Doeffer,* 42 Wis. 391 ; *Home Savings Bank* v. *Boston,* 131 Mass. 278, 279 ; 44 Iowa 133, 134 ; *Blackwood* v. *Cliett,* 30 Mich. 118, 121, 122 ; *Moss* v. *Shear,* 25 Cal. 38, 44, 45 ; *Blakely* v. *Bester,* 13 Ill. 708, 714 ; *Coxe* v. *Gibson,* 27 Pa. St. 160, 165 ; *Bowman* v. *Cockriel,* 6 Kan. 331, 332 ; *Morrill* v. *Douglass,* 17 Kans. 291 ; Cooley on Taxation 348–351 and notes.

3. The court erred in not allowing Pool credit for the one thousand four hundred and fifty-six dollars and eighty-one cents paid by him at first sale. It is a universal rule in law that a party cannot blow hot and cold. That he cannot repudiate a transaction and yet claim a benefit from it. The defendants claim and the court finds that Pool cannot claim that he paid the purchase-money at the first sale in good faith, and therefore is entitled to the benefit of the two years' statute of limitation, because he agreed and consented that this sale should be void, and that a resale should be had, and that he should have credit for his one thousand four hundred and fifty-six dollars and eighty-one cents at the resale. That doctrine is monstrous to me. He waived the first sale if at all on the agreement as found by the court that he was to have the benefit of this money at the second sale. The transaction must stand or fall together. If he is denied this credit on the second sale then the plainest principles of justice require that he be remitted to all his rights under the first sale. And if the court holds that he cannot claim under the first sale because he waived on this agreement, then the condition on which he waived it must be performed, and that is to give him credit for this one thousand four hundred and fifty-six dollars and eighty-one cents on his bid at the second sale.

But independent of this he is entitled to the credit. The court only allowed him credit for the five hundred dollars paid to White, and refused to allow credit for the seven hundred and twenty-eight dollars loaned to Brame.

(1.) The proof shows that defendant knew that the money was loaned out and made no objection to it.

(2.) The proof shows that L. Brame was solvent and the loan amply secured, and the administrator had a right to loan out the funds.

(3.) The proof shows that Brame paid back two hundred dollars of this money by a deed of trust on Bob Bell, transferred to Ellis, the administrator, and that Bob Bell actually paid it to the administrator in 1876, and also that Brame settled the balance he owed Ellis in fees Ellis owed him, and a large part of these fees were doubtless fees in this very administration, for the proof shows that Brame was the attorney of the administrator.

4. The court erred in rejecting three of the probated claims of Pool, to wit, one for board, ten hundred and fifty dollars, one note for four hundred dollars, and one note for twenty-eight dollars and fifty cents.

*R. C. Beckett*, of counsel for the appellant, argued the case orally.

*Fred. Beall*, for the appellees.

1. Appellant was in possession of the land, claiming to be the owner thereof, and using it, and it was his duty to pay the taxes thereon. *Gaskins* v. *Blake*, 27 Miss. 675 ; *Douglas* v. *Dangerfield*, 10 Ohio 152; *Ballmer* v. *Forsyth*, 13 How. U. S. 18; Blackwell on Tax Titles, star p. 400, top p. 397 ; Cooley on Taxation 345 *et seq.*

The assessment is as follows :

Alfred Ellis' estate, S. ½ tract, 140 acres, value per acre $6, $840.

Alfred Ellis' estate, S. ½ tract, 180 acres, value per acre $7, $1,260.

No section, township, or range is given.

2. The assessment and deed are both void for uncertainty, and this sale can cut no figure in the case. I call the attention of the court to the following authorities : *Bowers* v. *Chambers*, 52 Miss. 597 ; *Vaughan* v. *Swanzie*, 56 Miss. 704 ; *Brown* v. *Guill*, 46 Miss. 299 ; *Yondell* v. *Pugh*, 53 Miss. 295–303 ; *Selden* v. *Coffee*, 55 Miss. 41 ; *Dingey* v. *Paxton*, 60 Miss. 1038.

But it is insisted that though the tax sale be void, yet it cannot be attacked after three years. It has recently been differently decided by this court in *Dingey* v. *Paxton*, 60 Miss. 1038, overruling *Power* v. *Penny*, 59 Miss.

3. All of the notes probated, or attempted to be probated by Pool against the estate of Alfred Ellis, showed upon their faces that they were past due at the time of the death of Alfred Ellis, the last one matured December 29, 1865.

The estate was attempted to be declared insolvent on November 7, 1872. Code 1857, p. 400, art. 11; Code 1871, § 1811.

Thomas S. Ellis was qualified as administrator December 10, 1866, or five years ten months and twenty-two days before the decree of insolvency.

The open account of Pool he made due January 1, 1867, and the first publication to creditors to probate claims was made May 4, 1867, five years five months and twenty-eight days before the date of the so-called decree of insolvency.

The account of Pool is not only not supported by any proof, but was barred by the general statute of three years. In fact, all the claims of Pool, Gaston's judgment included, were barred either by the three years' or six years' statutes of this State, and by the four years' also. *Boyd* v. *Lowry*, 53 Miss. 382; *Champion* v. *Coyle*, 54 Ib. 695; *Selvey* v. *Simmons*, 57 Ib. 713; *Byrd* v. *Byrd*, 28 Miss. 144; Code 1857, p. 448, art. 98; Code 1857, p. 449, art. 103; Code 1871, § 1158.

4. Counsel for appellant insist that the first sale was valid, notwithstanding the decree. For the sake of argument I grant this; then how does that help Pool? At that sale he only claims to have bid off two hundred and eighty-one and a half acres, the west half. He refused to comply with that sale or any of the terms thereof.

COOPER, C. J., delivered the opinion of the court.

We do not find it necessary to determine whether, since the adoption of the constitution of 1869, it is competent for a chancery court under any circumstances to direct a sale of land to be made in tracts exceeding one hundred and sixty acres. It is indisputably true that the sale made in 1872 was thought by all parties to be invalid because of the excess in quantity of each tract offered, and a re-sale was made to conform to the constitutional provision. No objection to the second sale was made by Pool. He acquiesced

in what was done, and appeared at the second sale and bought again the land which had previously been sold to him.

Neither the sale made in 1872 nor that made in 1873 was ever confirmed by the court. The appellant was not under obligation to pay to the administrator any portion of his bid before confirmation, and such payment was not binding upon the estate or the heir-at-law. The administrator held the money as a mere depository of the purchaser, and if it was wasted or misappropriated by him the loss must be borne by the purchaser. *State, in re,* v. *Cox,* 62 Miss. 786 ; *Fearing* v. *Shafner,* Ib. 791.

The Chancellor by subrogating the appellant to the rights of the creditor, to the payment of whose debt against the estate a part of the purchase-money was applied, extended to him the full measure of relief to which he was entitled. The debts due from the intestate to the administrator were properly liquidated by applying to them the assets of the estate wasted and misappropriated by him. If it is true that some portion of the estate was converted into money and appropriated to his own use by the administrator, after he had received the purchase-money of the land from the appellant, it would not give to the appellant the right to be subrogated to the position of the administrator as creditor of the estate, and to cause a second payment of the debts by the heir-at-law of the intestate. Their rights are superior to those of the appellant, and subrogation, which is an equitable scheme to preserve rights which would otherwise be lost, cannot be invoked as against one occupying an equal position with him who invokes it.

Whether the sale of the land for taxes was valid, or void, as found by the Chancellor, because of excessive taxes and an indefinite description of the lands, is in our opinion immaterial, since the appellant by reason of his relation to the land could not assert the title thus acquired against the heirs-at-law.

If, because of the appropriation of a part of the purchase-money to the payment of debts of the intestate he had an equitable charge upon the lands, he would occupy the position of a mortgagor in possession receiving the rents and profits of the estate, and therefore a purchase by him would be treated only as a payment of a com-

mon charge made for the benefit of the whole estate. If, on the other hand, he was a mere intruder, liable to the owners for the rents of the land, these rents, which exceeded the amount paid for taxes, would operate *eo instanti* as payment of the amount expended in the purchase and as a redemption of the property. *Gaskins* v. *Blake,* 27 Miss. 675.

So also it is immaterial whether appellant was in possession of the lands in the year 1874, as some of the witnesses for the appellees say he was, or only went into possession in 1875, as he contends. In either event the appellant became liable for rents and profits in excess of his bid before the expiration of the period allowed for redemption. Until the lapse of the time in which the owner is permitted to redeem, the title of the purchaser is inchoate and does not carry with it the right to the possession of the land as against the owner. And the disability to buy carries with it the disability to invoke the special statute of limitations provided for the protection of those who hold under tax sales. *McGee* v. *Holmes,* 63 Miss. 50.

We find it unnecessary to explore the voluminous record to weigh the testimony as to the value of the rents of the land which were awarded to the appellees, or to determine what rate of interest should have been allowed on some of the claims propounded by the appellant against the estate, or to examine the correctness of the Chancellor's decree in disallowing the claims which were rejected.

All of the rejected claims were barred by limitation at the date of the decree of insolvency, as were all those for which an allowance was made to appellant, save only the judgment in favor of Gaston of which he became the owner.

Administration was granted upon the estate of the intestate on the       day of       1866, the petition to declare the estate insolvent was filed on the       day of       1869, but the decree thereon was not made until November, 1872, more than six years after the grant of letters of administration. It is evident that unless the statutes of limitation were suspended by the petition to declare the estate insolvent all claims not sued on were

barred by art. 10, ch. 57, p. 400, of the Code of 1857 (art. 2155, Code of 1871,) which declared that "No action, or *scire facias,* shall be brought against any executor or administrator upon any judgment, or other cause of action, against his testator or intestate, but within four years after the qualification of such executor or administrator."

By the act of November 21, 1821 (Hutchinson's Code 667), it was declared that no action or suit should be commenced or sustained against an executor or administrator "after the estate of the testator or intestate be represented insolvent." This act was afterward amended so that suits pending against the personal representative at the time of representation of insolvency should not thereby abate but might be prosecuted to final judgment, but no execution might issue thereon. Act of June 30, 1822; Hutchinson's Code 673.

In the revision of the laws by the Code of 1857 the amendment of 1822 was alone brought forward, and since that time there has been no statute prohibiting a creditor from instituting his action against an executor or administrator who had represented the estate of his testator or intestate to be insolvent.

By a decree of insolvency the property of the estate is withdrawn from liability to seizure and sale under legal process. *Parker* v. *Whiting,* 6 How. 352.

And since by the *decree* creditors are prevented from suing, it suspends the running of the statute of limitations upon their demands. *Hendricks* v. *Pugh,* 57 Miss. 157.

If the decree should be reversed and the account stated on the basis contended for by the appellant as to all claims properly chargeable on the lands and not barred by limitation at the date of the decree of insolvency, the result would be to increase rather than to diminish the decree against him. Without, therefore, deciding whether there was or was not any error in the method directed by the Chancellor for stating the account, it is sufficient to say that if there be error it is more than counterbalanced by the allowances erroneously made in his favor, and he cannot complain of the final result.

*The decree is therefore affirmed.*