CARRAWAY *et al. v.* LOCKARD.[*]

(Division B. April 16, 1928.)

[116 So. 599. No. 27084.]

---

[*]Corpus Juris-Cyc. References: Taxation, 37Cyc, p. 1503, n. 70.

*Ford, White, Graham & Gautier,* for appellant.

*H. P. Heidelberg,* for appellee.

Argued orally by *E. J. Ford,* for appellant, and *H. B. Heidelberg,* for appellee.

ETHRIDGE, P. J. J. E. Lockard was complainant in the court below, and filed a suit against the numerous heirs of Ben Carraway, deceased, and others, to confirm a tax title to lands described in the bill. The court, after a hearing, sustained the bill, and confirmed the tax title, except that certain minor defendants, whose period for redemption had not expired, were granted the right to redeem after becoming of age, etc. The bill deraigned the title to Ben Carraway, and alleged that he had sold some of the land to certain of the defendants in the bill.

It was alleged that on the 5th day of April, 1915, the tax collector of Jackson county sold said lands at delinquent tax sale to Hazel M. Russell, who died leaving O. P. Robinson, her husband, her sole heir, and that he, in turn, on January 4, 1926, conveyed said land to complainant Lockard; that the said sale was for the taxes for the fiscal year 1914; that the land was assessed to Ben Carraway as "south one-half of southwest quarter of section 9, township 6 south, range 7 west, less three acres to Jack Greenwood," and the taxes were not paid. The bill further alleged that in 1904 Carraway and his wife sold to Jack Green (who, the testimony shows, is the

same party as Jack Greenwood), three acres of the land. The bill further alleged that the defendants were in actual possession of the land at the time the suit was brought, and prayed, not only for a confirmation of the title, but also for writs to put complainant in possession thereof.

The answer denied the validity of the tax sale, as well as the proceedings leading up thereto. The answer further averred that the sale was void because of the fact that Hazel M. Russell's father, H. F. Russell, had acquired an interest in the land in 1911 through an execution sale, and had been paying the taxes thereon, and that the sale to his daughter was collusive, and therefore void, having been procured to be made by one of the tenants in common, to-wit, H. F. Russell. It was also set out in the answer that on the date of the tax sale, at all times since, and for many years prior thereto, the defendants had been in actual possession of the land, living upon it, cultivating it, and claiming same adversely to the world, and that they were entitled to the land under the ten-year statute of limitation (Hemingway's Code 1927, section 2632).

Complainant offered the tax collector's deed, and, standing on this solely as record proof, introduced H. F. Russell. Russell testified as to having bid the land in, in 1914, as to the interest of John Carraway, sold at an execution sale, and as to the judgment in favor of Lockard and against Carraway; testified that he paid one hundred fifty-three dollars for John Carraway's interest, and from 1910 to 1915 paid the taxes and allowed the Carraways to live on the land. He denied that he had promised the defendants, or any of them, to pay the taxes. He testified that the land was purchased by Hazel M. Russell in 1915; that she had funds of her own, and wanted to buy lands at tax sales; that either he (the said Russell) or Hazel M. Russell's uncle. Duncan Minor,

was present at the sale in question, and bid this land in for Hazel M. Russell.

The defendants were unable to prove any collusion between H. F. Russell and Hazel M. Russell, by which the lands were bought in by H. F. Russell at the tax sale. H. F. Russell denied any such collusion, and testified that the money paid therefor belonged to his daughter individually. It appears from the testimony that none of the defendants had paid the taxes on the lands from 1910 to the date of the tax sale, and that they failed to redeem the lands within two years allowed for the redemption of such lands. One of the witnesses, the husband of Frances Carraway, deceased, testified that he paid the taxes on the land for a year or two, during his wife's lifetime, but that after he "funeralized his wife" he moved away.

It is argued that the defendants should have prevailed, because they were undisputedly in possession of the lands in question for a period of more than ten years before the suit for confirmation and possession was filed. Less than ten years had elapsed from the period when the redemption period expired, and the statute of limitation plea is not established, if the period runs from the expiration of the date of redemption. But the statute would have run if the date of the tax sale was the date from which the statute began to run. As there was a conflict of evidence on all other points, the chancellor's finding will be upheld as to such points; and the only question to be determined on the present appeal is whether or not the statute began to run from the date of sale, or whether it began to run from the expiration of the two years after that date, and the right of redemption expired when the tax collector's deed was delivered to the purchaser.

No case of this state deciding precisely this point has been cited. In *Pool* v. *Ellis,* 64 Miss. 555, 1 So. 725, it was said in the opinion:

"Until the lapse of the time in which the owner is permitted to redeem, the title of the purchaser is inchoate, and does not carry with it the right to the possession of the land as against the owner."

In *Murphy* v. *Seward et ux.*, 145 Miss. 713, 110 So. 790, the court said:

"While section 4332, Code of 1906 (section 6966, Hemingway's Code), provides that a tax collector's conveyance 'shall vest in the purchaser a perfect title to the land sold for taxes, subject to the right of redemption,' this conveyance is not delivered to the purchaser until the expiration of the period of redemption, and during the *interim* the purchaser has none of the rights of true ownership. He has no right to the possession and enjoyment of the estate, and, if he enters upon the land without the consent of the delinquent owner, he is a trespasser."

In *Howze* v. *Rook Lumber Co.*, 118 Miss. 293, 79 So. 98, this court held that where the land was sold for taxes, and after the date of sale and during the time allowed by law for redemption, the delinquent owner of the land sold a house situated thereon to the defendant, who tore it down and used the lumber to build another house, the purchaser at such tax sale could recover the value of the house.

It appears from these decisions, we think, that the title of the owner, on the expiration of the two years for redemption, dates back to the date of the original sale, but that during the two-year period allowed for redemption the purchaser is not entitled to possession of the land, and consequently can maintain no action to dispossess the person in possession. The statute, in our opinion, begins to run from the date of the expiration of the period for redemption when the deed is delivered to the owner. It seems to us it would be a complete answer, to a suit of this kind filed during the two-year period, to show that the period of redemption had not expired, and that, con-

sequently, the party in possession of the land and seeking to confirm the title thereto could not maintain such suit.

It is true that the general statute of ten-year limitation provides that open, adverse, continuous possession for a period of ten years vests title in the person occupying the land, and so claiming it. But, unless the adversary could maintain an action for possession, the statute will not apply, and consequently, during such period, such possession is not hostile to the purchaser at the tax sale, in such sense as to make it an adverse possession. We are therefore of the opinion that the court below correctly decided this point, and the judgment is affirmed.

*Affirmed.*

