BANK OF HICKORY *v.* O. S. McPHERSON ET AL.

[59 South. 934.]

1. PARTITION. *Sale. Right to purchase price. Confirmation. Trust. Following trust property. Banks. Deposits. Trust funds.*

Where lands are sold for partition between tenants in common by a commissioner appointed by the court and the purchaser pays the price to the commissioners at once the money did not inure to the owners of the land until the sale was confirmed, but when the sale is confirmed and the conveyance made by the commissioner, the tenants in common may sue for equitable relief for nonpayment to them of the purchase money.

2. TRUSTS. *Following trust property.*

Whenever a trustee has been guilty of a breach of trust, and has transferred the property, by sale or otherwise, to any third person the *cestui que trust* has full and perfect right to follow such property into the hands of such third person unless he stands in the position of a *bona fide* purchaser for value without notice, and if the trustee has invested the trust property, or its proceeds, in any other property into which it can be distinctly traced, the *cestui que trust* has his election, either to follow the same into the new investment, or to hold the trustee personally liable for the breach of trust.

3. BANKS AND BANKING. *Deposits. Trust funds.*

Where a commissioner sells land for partition among tenants in common by order of the court and a check is given to him

payable to him as commissioner for the purchase money before confirmation of the sale, he is not the owner in his individual capacity of the check and he may not, either before confirmation of the sale or after, place its proceeds to his individual credit, and where a bank places the proceeds of the check to the commissioner's individual credit, with notice of the fiduciary character of the proceeds, it is liable to the beneficiaries of the trust for a diversion of the funds.

4. BANKS AND BANKING. *Deposits. Trust funds.*

Where a purchaser at a sale of lands by a commissioner appointed by the court to make the sale for partition among tenants in common, gave the commissioner a check for the purchase money payable to him as commissioner, the check on its face showed that it did not belong to such commissioner individually and a bank crediting the proceeds of such check to the commissioner personally and afterwards aiding him in an unlawful application thereof to the payment of his private debts, was liable to the beneficiaries of the trust for the misappropriation of the proceeds of the check.

APPEAL from the chancery court of Newton county.
HON. SAM WHITMAN, JR., Chancellor.

Suit by Mrs. O. S. McPherson and others against the Bank of Hickory. From a decree for complainants, defendant appeals.

The facts are fully stated in the opinion of the court.

*G. C. Tann,* for appellant.

There are several grounds of demurrer, the first one is: "There is no equity on the face of the bill," and the seventh ground of demurrer is: "That the money was paid by O. S. McPherson to Harper before the sale was confirmed by the court."

It has always been the doctrine in this state that in judicial sales the title to the land does not pass to the purchaser, and the right to the money does not enure to the owners of the land until the sale is confirmed by the court, and this money was paid to Harper during his lifetime, and the sale was not confirmed, if it ever was, until after his death.

The question has been before this court in every conceivable shape, and in every instance, this court has held that this was the law, and our contention is, that if the right to the money does not enure to the owners of the land, until the sale is confirmed, that at the time that this money was paid into the Bank of Hickory and credited to the individual account of Harper, it was not appellees' money, and the land did not at that time belong to McPherson, the purchaser. That he is the man that should have brought this suit and not the appellees. *State* v. *Cox,* 62 Miss. 786; *Ferring* v. *Shafner,* 62 Miss. 791; *Pool* v. *Ellis,* 64 Miss. 563, 1 So. 725; *Camp* v. *Saucier et al.,* 8 So. 846; *Tooley* v. *Gridley,* 16 Smedes & M. 493; *Sanders* v. *Dowell,* 7 Smedes & M. 206; *Gowan* v. *Jones,* 10 Smedes & M. 164; *Henderson* v. *Herrod,* 27 Miss. 685; *Mitchell* v. *Harris,* 43 Miss. 314; *Redus* v. *Hayden,* 43 Miss. 614; *State* v. *Cox,* 62 Miss. 786; 2 Daniel, Ch. Pr. 1274, et seq.; Am. & Eng. Ency. Law, 219; *Cruikshank* v. *Luttrell,* 67 Ala. 318; *Alsobrook* v. *Eggleston et al.,* 13 So. 850; 12 Am. & Eng. Ency. of Law, 219.

No valid deed can be made until after the sale is confirmed. 12 Am. & Eng. Ency. Law, 220-221.

"The accepted bidder is merely a proposer, and to divert the former owner's title and render valid the deed to the purchaser the sale must be confirmed." 24 Cyc. 33A.

"The risk of loss pending confirmation is upon the vendor. If the property is accidentally destroyed after the sale and before confirmation, the purchaser will not be compelled to complete." 24 Cyc. 24, 34.

Every authority that I can find, holds that the title to the property sold does not pass to the purchaser and the right to the money does not inure to the owners of the land until after the sale is confirmed, and if there is anything in the doctrine "stare decisis," this is now the law, and this being the law, and this money having

been paid by McPherson to Harper before confirmation of sale, it was at his own risk. Harper was a mere depositary of McPherson, and if Harper squandered the money, it was McPherson's loss, and not the owners of the land—not the appellees. The appellees were the owners of the land on the 9th day of March, 1905, when Harper paid the money into the Bank of Hickory, and McPherson was the owner of the money. This being the case the appellees have no rights against the Bank of Hickory, even if it is liable for the money to McPherson.

*Jesse D. Jones,* for appellees.

We submit that the check made payable to G. B. Harper, commissioner, who was well known to be the sheriff of the county, with the word commissioner following the sheriff's name, was sufficient to put the appellant on inquiry to ascertain to whom it rightfully belonged before permitting same to be paid out, and that the appellant had no right, but did so at its peril, to permit the checks made payable to G. B. Harper, commissioner, to be placed to the credit of G. B. Harper's personal account unless the indorsement of the check showed conclusively that the rights of the funds had passed from his fiduciary capacity to his individual ownership, which was not done in the case at bar. See 3 Am. & Eng. Ency. of Law (2 Ed.), 831-2.

We submit that the rule announced in the case of the *State of Louisiana* v. *Jahraus,* holding that the letters "T. C." following the signature of the sheriff of the county to a check was sufficient to put the party dealing with the sheriff on guard as to the ownership of the fund, 41 So. 575 is the true rule of law and should be strictly applied to this case. Also, see *American National Bank* v. *Fidelity Deposit Co.* as to peril of bank in permitting the withdrawal of trust funds. 12 Am. & Eng. Cases, pp. 666 and note.

We submit to the court for its closest inspection the case of *Duckett* v. *Mechanics' National Bank,* 39 L. R. A. 84. This case is analogous and almost on all fours with the case at bar. The reasoning in the case is sound and ought to be adhered to in the decision of this case in every respect, and in all other cases when the rights of minors and infants are being invaded upon. I especially call the court's attention to that feature of the opinion dealing with trust funds, and notice to the bank. I beg the pardon of the court for not being able to quote this case in full, but the report has been misplaced and I am unable to find it.

We submit that when the appellant bank permitted the check or funds passing by the issuance of said check to be passed from the claim of G. B. Harper, commissioner, to the claim of G. B. Harper by letting the indorsement of G. B. Harper, commissioner, be made thereon and said bank placed the same to the individual credit of G. B. Harper and after the death of the said G. B. Harper, paid the same to the insolvent estate of G. B. Harper without making inquiry as to the rightful owner of said funds, that the said bank by its own acts and conduct brings itself clearly within the rule laid down in the cases of *Eyrich* v. *Bank,* 67 Miss. 60; *Armour* v. *Bank,* 69 Miss. 700, 11 So. 28.

We submit that under the rule announced by the United States Supreme Court in case of *Duncan et al.* v. *Jourdon,* 23 Law Ed. 142, the appellant had no right to place the funds of G. B. Harper, commissioner, to the credit of G. B. Harper, commissioner, and failure to do so rendered the appellant liable. See *Isom* v. *First National Bank of Jackson,* 52 Miss. 902, wherein the bank was held imputable with knowledge and held liable for incorrect handling of trust funds.

As to notice from words used in check or bill of exchange, see *Davis et al.* v. *Henderson,* 25 Miss. 549.

We submit that the decision of the chancellor in overruling appellant's demurrer was eminently proper, and

in view of the allegations of the bill of complaint no other just decision could have been rendered, and in view of the argument of counsel of appellant and the admissions therein, that the proper verdict to be rendered in this cause would be to give judgment for appellees in the supreme court, and in no event to reverse the decision of the chancellor.

*Flowers, Alexander & Whitfield,* for appellees.

We say that under the well-recognized rule of banking; which this court will recognize, the only way whereby, on the check here under consideration, the bank could ever safely deposit the proceeds to the credit of Harper individually would have been to deposit the proceeds to the credit of G. B. Harper, commissioner, and subsequently when G. B. Harper, commissioner, should present check signed by him as commissioner payable to the order of G. B. Harper personally then the bank would be safe in honoring the check in the absence of notice of claim by third persons. But where, as here, the check of the purchaser for the six hundred and eighty dollars was payable to the order of G. B. Harper, commissioner, and the only indorsement on the check's back, "G. B. Harper, Commissioner," then the proceeds must necessarily have been legally deposited or credited to the account of G. B. Harper, commissioner. On this check here in contemplation, and an additional indorsement of "G. B. Harper" followed the indorsement already upon its back, then the situation might be different. But mark you, under the rules of banking, requiring the person who shall ultimately receive or get credit for the proceeds to indorse his name upon the back of the check. What is such name in this case? On page 10 of the record it is shown to be "G. B. Harper, commissioner;" subsequent indorsements are only of the different collecting banks through which the check passed from the Bank of Hickory after the Bank of Hickory took it for

collection from the Bay Springs Bank. On page 10 the clerk of the court below in making up the record has not clearly shown what part of the typewriting represents the face of the check and what part represents the indorsement on the back of the check, yet by referring to page 4 of the record it is shown that the words "G. B. Harper, commissioner," and subsequent notations on page 10 represent the indorsements on the back of the check. The cases of *Isom* v. *First National Bank,* 52 Miss. 902; *Eyrick* v. *Bank,* 67 Miss. 50, and *Armour* v. *Bank,* 69 Miss. 700, uphold our contention and the decision of the court below in this case.

The next ground of demurrer is that the bill fails to show that the defendant was in any way interested in the crediting of the check to the individual account of Harper or that it received any profit thereby. The reply to this contention is that a bank is in law presumed to hold itself to a very high degree of responsibility, and it is unnecessary in law under the circumstances, such as are set forth in the bill, to show that the bank was in any way interested or received any profit by illegally crediting the check to the individual account of Harper. Presumably learned counsel for the bank, in preparing the demurrer, was erroneously led astray by the incorrect theory that a bank in its dealings with depositors or persons interested in deposits can insist upon the idea of consideration between the bank and the depositor to make the bank liable for deposits. This is not, of course, the law.

The next ground of demurrer alleges that the bill recites the money to have been paid to Harper before confirmation of sale. Our reply is that the exhibits to the bill show that Harper was appointed commissioner to sell the lands and make report thereof. The decree of December 6, 1904, appointing Harper commissioner, distinctly recited that he, as commissioner, should advertise the land as the law directed and "that he sell the

same for cash in front of Bank in Newton," etc. When
the court directs a commissioner to sell property for cash
the commissioner must sell for cash. A commissioner to
mak a sale, unless it be a sheriff or clerk of the court,
must give a bond before entering on the discharge of his
duties. Code 1906, section 640. Why is this bond re-
quired? Simply because it is presumed that the pur-
chaser at a sale of land will pay cash at a required cash
sale, to the commissioner and the bond is to see to it that
the commissioner "pay according to law all money which
may come into his hands as such master or special com-
missioner." This is quoted from section 640 of the Code.
Hence, the law itself presumes that the commissioner
will receive the money consideration of sale before sub-
sequent confirmation of sale and after a confirmation of
sale the commissioner will "pay according to law all
money which may come into his hands as such master
or special commissioner." In *Johnson* v. *Bobbett,* 81
Miss. 345, the clerk of the chancery court was appointed
commissioner to sell certain realty for division of pro-
ceeds among tenants in common, and he did so and re-
ceived the proceeds of sale before any report thereof
was confirmed. It is recited in this case that "the obli-
gation to hold and pay money to the party entitled to it
when called for is incurred when the money is received."

The next ground of demurrer is to the alleged effect
that Harper had no authority in law to receive the check
as commissioner until the said sale was confirmed by the
court. Had it been alleged that Harper had no author-
ity to receive checks when he received cash, we might
find some concern here, except for the fact that, of
course, Harper would be estopped on receiving the check
and testing it and cashing it (i. e., making cash of it.)
But as to the authority, in fact obligation, of Harper to
receive the proceeds of sale there can be no question.
Would any of the learned members of this court, when
practicing law (especially before they become rich) have

considered any fee ''a cash fee'' when the fee was to be paid after the happening of some future contingency, as for instance the confirmation of certain proceedings? It is a dangerous proposition for the court of equity to lay down the rule that, as regards minors and persons of unsound mind and nonresidents, a commissioner who is required to sell property of such person ''for cash'' may make a sale which is not for cash at all but which may after confirmation by the court in future be retrograted from by the purchaser.

The last ground for demurrer is that the commissioner, Adams, and not Harper or the bank is the party to whom complainants should look for the purchase money of the land. On such an absurd proposition as this (since Harper got the money and Adams did not) we will not make any unnecessary remarks until this court shall suggest that we do so.

We accordingly assert that for two reasons the decree of the court below in overruling the demurrer should be affirmed and the case remanded for further proceedings. The first reason is that the bill alleges fraud on the part of the bank which is not denied by the bank under oath. The demurrer admits the allegation of fraud and, of course, it follows that chancery has jurisdiction. *Ford* v. *Brown,* 18 L. R. A. (N. S.) 188.

The second reason is that under the allegations of the bill the Bank of Hickory must be charged for its action in erroneously crediting the draft, trust fund, to the individual account of Harper, by reason of any indorsement of the name of Harper as individual. The check on its face is to the order of the commissioner as payee. The indorsement on the back of the check is that of commissioner. This was notice to the bank. What says the law? *Ison* v. *Bank,* 52 Miss. 902; *Eyrich v. Bank,* 67 Miss. 60; *Armour* v. *Bank,* 69 Miss. 700. And, see *Fogg* v. *Bank,* 80 Miss. 750.

For a full decision of this question see *Ford* v. *Brown,* 1 L. R. A. (N. S.) 188, where it is held that indorsement by the trustee gave actual knowledge of the trustee's want of authority to dispose of the paper foɪ his own individual benefit. This is a Tennessee case decided in 1905. *Duckett* v. *National Bank,* 86 Md. 400, 39 L. R. A. 84, 63 Am. St. Rep. 513; *Emmerodo Elevator Company* v. *Bank,* 29 L. R. A. (N. S.) 567; *First National Bank* v. *Fidelity & Deposit Company,* 12 Am. & Eng. Ann. Cas. 666; *Davis* v. *Henderson,* 25 Miss. (3 Cushman) 558.

As the result of mixing funds, see *National Bank* v. *Life Insurance Company,* 104 U. S. 54, 26 L. Ed. 695. See, also, *Central Bank* v. *Life Insurance Company,* 26 L. Ed. 693. On page 516 of 5 Cyc., it is held that while the mingling of trust and individual deposits has been approved in only one case (48 Conn., 550), yet "the circumstances are suspicious and should lead an institution to exercise caution in responding to checks. And under note 51 of page 516 it is recited that, if a bank receive a check payable to a depositor, as a trustee, and credits it to his personal account and permits him to draw it out on his personal check, it is liable with him for a breach of the trust. *Exchange Bank* v. *Lorella Gold Mining Co.,* 165 Ill. 103, 46 N. E. 202, 56 Am. St. Rep. 236; and situation is also made of *Duckett* v. *Bank,* 86 Md. 400, 63 Am. St. Rep. 513, 39 L. R. A. 84. And citation is there made, also, to *Munnerlyn* v. *Bank,* 88 So. 333, 30 Am. St. Rep. 159, and no other cases.

It is contended in the brief of learned counsel for appellant that it has been the doctrine in Mississippi relative to judicial sales that the title of the land does not pass to the purchaser and the right to the money does not enure to the owners of the land until the sale is confirmed by the court. Whether this be correct or not, it need not here be concerned. It is undeniable under the allegations of the bill that Harper, as commissioner, made

a judicial sale, received six hundred and eighty dollars, as trustee at sale and that such sum was paid to him in his trust relation. He accordingly received it in trust to be paid over to the parties entitled thereto when the sale should be confirmed. By virtue of his office and of his receipt of the money it became and continued to be trustee business. And when the sale was actually confirmed, as it was in future the trust ripened into the requirement that the parties entitled to the fund should have it. If learned counsel can set up the contention that there was no confirmation of sale then possibly his view may be upheld, although in such case the bank would become liable for the commingling and used up fund to the party who paid the money and not to complainants. One cannot get away from the proposition that the fund, from whatever view you may look at it, was a trust fund for the use of somebody. Harper received it as such. To whom would he in future be liable for payment would of course be contingent on whether the court would in future confirm the sale, if the sale should be confirmed. Harper, commissioner, would be due the money of complainants; if the sale were not confirmed he, as commissioner, would be due it back to the person who paid it to him. And as the court did confirm the sale it cannot be said that the fund was not a trust fund wherein complainants had no interest.

Argued orally by *G. C. Tann,* for appellant, and *Chalmers Alexander,* for appellees.

Cook, J., delivered the opinion of the court.

This case was appealed from the chancery court of Newton county from a decree overruling defendant's demurrer to the original bill of complainant to settle the principles of law involved in the litigation. The bill of complaint sets up this state of facts: At a former term of the chancery court of Newton county, complainants petitioned the court to order the sale of certain lands,

of which they were tenants in common, for partition; that the prayer of the petition was granted by the court, and G. B. Harper, sheriff, was by the court appointed its commissioner to sell the land to the highest and best bidder for cash, and to report his sale at the next succeeding term of the court; that, in pursuance of said decree, G. B. Harper, sheriff and commissioner, after having complied with all the formalities precedent to the sale, sold the land to one O. S. McPherson for the sum of six hundred and eighty dollars; that the said McPherson paid the purchase money to G. B. Harper, commissioner, by his personal check on Bay Springs Bank, the check being dated March 2, 1905, and payable to G. B. Harper, commissioner; that said check was deposited in the Bank of Hickory, appellant, and was indorsed "G. B. Harper, commissioner," and that the check passed through other banks in the course of collection, and was finally paid by the Bay Springs Bank; that the appellant bank, well knowing that the funds covered by the check were not the personal funds of G. B. Harper, and although the check on its face gave notice to the bank that the funds were payable to Harper in his fiduciary character as commissioner, the bank nevertheless passed the six hundred and eighty dollars to the credit of the personal account of G. B. Harper, and permitted Harper, or his personal representative, to withdraw said money by his personal checks in payment of personal debts. The bill shows further that G. B. Harper departed this life before he had reported this sale of the land to the chancery court for confirmation; that the death of Harper and the sale were properly presented to the chancery court, and the court appointed S. M. Adams special commissioner to report said sale and make a deed to the purchaser. By the authority of the court, the special commissioner conveyed the land to O. S. McPherson, the purchaser at the sale made by G. B. Harper, commissioner, in consideration of the check drawn as above stated. Upon this state of facts, admitted by the de-

murrer, complainants prayed for a decree against the Bank of Hickory for the six hundred and eighty dollars and legal interest.

It will be seen that the relief sought is predicated upon the theory that the check, on its face, gave evidence of the character of the fund which it represented, and that the bank, in dealing with the money, was chargeable with notice that G. B. Harper could not use same except in his fiduciary capacity. The check was properly indorsed, "G. B. Harper, commissioner," and it is the contention of appellees that the money represented by it could not be paid to any one except upon the order of "G. B. Harper, commissioner." The bill charges that the bank placed the funds to the credit of G. B. Harper and disbursed the same upon his personal checks, or upon the checks of his personal representative after his death.

Admitting all that appellees say in their bill of complaint, except its legal conclusions, appellant insists that the money paid by McPherson to Harper was not due or payable until the sale of the land was confirmed by the chancery court, and that the title to the money did not pass to the commissioner until after the sale had been approved by the court. This being true, it follows that Harper did not and could not deal with the check as commissioner, but merely collected the same and dealt with the proceeds in his personal capacity. This is the position of counsel representing that side of this controversy, and they cite a long line of decisions of this court to sustain their view.

It must be admitted that the money paid by McPherson did not inure to the owner of the land until the sale was confirmed, and that this is the well-settled law of this state cannot be questioned; nor do we entertain any doubt of the soundness of the doctrine so often announced by this court. We think, however, that the principle so decided in no way conflicts with the principle determinable of this case, and an examination of the authori-

ties cited by appellant will, we believe, make it patent
that the doctrine so universally adhered to may be used
in support of the theory of appellees. It is not claimed
that complainants in the original bill have any title to,
or equity in, the fund, until after the confirmation of
the sale; on the contrary, the confirmation of the sale
and the conveyance of the land to the purchaser forms
the basis for this suit, without which it may be admitted
that the bill fails to disclose any grounds for equitable
relief. All of the cases cited are to the effect that the
commissioner and the owner of land sold by order of the
chancery court do not obtain title to the purchase money
before the court confirms the sale, and, without discuss-
ing any of the decisions, we refer to the cases cited:
*State* v. *Cox,* 62 Miss. 786; *Fearing* v. *Shafner,* 62 Miss.
791; *Pool* v. *Ellis,* 64 Miss. 563, 1 South. 725; *Campe* v.
*Saucier,* 68 Miss. 278, 8 South. 846, 24 Am. St. Rep. 273;
*Also brook* v. *Eggleston,* 69 Miss. 833, 13 South. 850;
*Maynard* v. *Cocke,* 18 South. 375.

We come now to the consideration of the point we be-
lieve to be the real and only point upon which a proper
interpretation of the rights and equities of the parties
to the litigation must rest. We think the bill of com-
plaint may be construed to charge actual knowledge in
the bank of the fiduciary character of the fund handled
by it, exclusive of the information conveyed by the form
of the check, but we rest this decision upon the naked
language of the check itself.

It is well settled by the decisions of this court, and is
supported by all of the text-writers, as well as the Su-
preme Court of the United States, that "whenever a
trustee has been guilty of a breach of trust, and has
transferred the property, by sale or otherwise, to any
third person, the *cestui que trust* has full and perfect
right to follow such property into the hands of such
third person unless he stands in the position of a *bona
fide* purchaser for valuable consideration without notice;

102 Miss.—55

and if the trustee has invested the trust property, or its proceeds, in any other property into which it can be distinctly traced, the *cestui que trust* has his election either to follow the same into the new investment, or to hold the trustee personally liable for the breach of trust." *Isom* v. *First National Bank et al.,* 52 Miss. 915. In *Armour* v. *Bank,* 69 Miss. 705, 11 South. 29, the court says: "Rather we put it upon the proposition that, if there was a misappropriation of the trust fund by the bank, or if there was a beneficial participation in the misappropriation of the trust fund, after knowledge of the fact that Lamon held the money in a fiduciary capacity, and that the Armour Company was the real owner of it, then the bank was liable for her fund."

Certain it is that Harper was not the owner of the check or the money after its collection, in his individual capacity, either before the confirmation of the sale of the land made by him by order of the chancery court, or, for that matter, after the confirmation of the sale; it follows, therefore, that the fund could not be taken by the creditors of Harper in payment of his debts, and it is equally certain that his bank could not place this fund to his individual credit, thus creating the relationship of debtor and creditor between the bank and Harper, and thereby enabling him to misappropriate the money which he obtained in a fiduciary capacity. If the bank did this, with full notice of the fiduciary character of the funds, it is liable to the beneficiaries of the trust for the diversion of the funds.

In *Davis* v. *Henderson,* 25 Miss. 549, 59 Am. Dec. 229, the court held: "It is sufficient if enough appear upon the face of a bill of exchange to put a prudent man upon inquiry, before taking it, to make the bill valid in law. Held, that it is not necessary that a bill of exchange should unequivocally disclose the name of the principal in order to exonerate the agent who executed it. . . . The word 'agent,' being attached to the drawer's (H.)

name and the bill to be charged to the drawee's own
agency, was at least sufficient to put a prudent man tak-
ing the bill from the drawee upon inquiry as to the pre-
cise terms of the contract between the original parties.''

In *Duckett* v. *Bank,* 86 Md. 400, 38 Atl. 983, 39 L. R. A.
89, 63 Am. St. Rep. 513, the supreme court of Maryland
discussed the facts of a case almost ''on all fours'' with
this case, and the remarks of the learned judge render-
ing the opinion of the court are so clear and strong,
and so aptly illustrate the question before us, we quote
at some length from the opinion, and adopt this lan-
guage as our own, viz.: ''The second, or Duckett check,
in terms directed the cashier of the Mechanics' Bank 'to
deposit' the two thousand and twenty-four dollars, and
thirty cents 'to the credit of Henry W. Claggett, trustee.'
This was an explicit notification to the bank that Clag-
gett was not the actual owner of the money. *Bundy* v.
*Monticello,* 84 Ind. 119; 3 Am. & Eng. Ency. Law (2d
Ed.), p. 832. It was an equally explicit instruction to
the bank not to place the funds to the credit of Clag-
gett's personal account. It was consequently more than
a mere memorandum made for the convenience of the
drawer of the check. Knowing that the money was not
Claggett's, but that it was payable to him, and to be de-
posited to his credit as trustee, the bank had no authority
to place it to his individual credit (*American Exch. Nat.
Bank* v. *Loretta Gold & S. Min. Co.,* 165 Ill. 109, 46 N. E.
202, 56 Am. St. Rep. 233); and, if loss ensued by reason
of Claggett drawing the fund out by checks on his per-
sonal account, the bank is liable to make restitution to
the trust estate. The bank in the eye of the law, partici-
pated in the breach of trust which Claggett was guilty.
In fact, the bank took the first step that ended in the
spoliation of the trust. Its act in placing distinctly
marked trust funds to the personal credit of Claggett
was obviously wrongful, and it must bear the resulting
consequences. It is no answer to say that had the bank

obeyed the direction given to it; and had it opened an account in the name of Claggett as trustee, and credited that account with these funds, still Claggett could have withdrawn them on checks appropriately signed, and could then have misapplied the money without involving the bank in any liability. This is no answer, simply because what might have been done was not done.''

In this connection we also quote the following from the syllabus of *Central Nat. Bank* v. *Connecticut Mutual Life Co.,* 104 U. S. 66, 26 L. Ed. 693, a case decided by the Supreme Court of the United States, viz.: ''Although the relation between a bank and its depositor is that merely of debtor and creditor, if the money deposited belonged to a third person and was held by the depositor in a fiduciary capacity, its character is not changed by being placed to his credit in his bank account. The contract between the bank and the depositor is that the former will pay according to the checks of the latter, and, when drawn in proper form, the bank is bound to presume, in case the account is kept in the name of the depositor as trustee or other fiduciary character, that the trustee is in the course of lawfully performing his duty and to honor them accordingly; but when, against such a bank account, the bank seeks to assert its lien as a banker for a personal obligation of the depositor, known to have been contracted for his private benefit, it must be held as having notice that the fund represented by the account is not the individual property of the depositor, if it is not · shown to consist, in whole or in part, of funds held by him in a trust relation.'' This case illuminates the question now being discussed, and marks the course for banks to pursue in dealing with paper not belonging to the depositor, but held in trust by him. There is not a discordant note in the authorities, so far as we have discovered, upon the precise question involved in the present case.

*Ford* v. *H. C. Brown et al.,* 114 Tenn. 467, 88 S. W. 1036, 1 L. R. A. (N. S.) 188, is directly in point, and

here, as in that case, the check gave actual notice that
it represented a trust fund, and obliged the bank to in-
quire into the right of the trustee to dispose of the fund.

Returning to the instant case, we find that Harper,
technically speaking, did not take the check as commis-
sioner; but, being commissioner, the purchaser of the
land gave to him his check on the Bay Springs Bank for
the amount at which he bid in the property, to be paid by
Harper to the owner of the land when the sale was con-
firmed by the chancery court. Harper thus became a
trustee of this fund, first, for McPherson, and, second,
for the parties for whose benefit the money came into his
hands. The money could not be taken by the creditors
of Harper, nor could it be taken by the creditors of the
ultimate beneficiaries until after the judicial confirma-
tion of the sale. There would be no dispute about the
right of the appellee to impound this money so long as
it remained in the possession of Harper, after the court
confirmed the sale, and this could be done by garnishing
the bank, or by a bill in equity against the bank of de-
posit of the fund, if the actual money could be traced
to the bank, or by a direct order of the court having ju-
risdiction of the partition proceedings directing Harper,
or his bank of deposit, to pay the money to appellees.

Looking through mere forms to the substance, it ap-
pears that the check was payable to Harper as commis-
sioner, which denoted to an ordinarily prudent person
that Harper was acting in some sort of fiduciary ca-
pacity with reference to the money ordered to be paid
to him by Bay Springs Bank, which information, if fol-
lowed up, would have disclosed to the Bank of Hickory
the actual status of Harper with reference to the money.
The Bay Springs Bank would have refused payment of
the check if it had been indorsed ''Geo. B. Harper,'' and
why? The answer is easy: Because the check was not
made payable to the order of George B. Harper, but to
Geo. B. Harper, commissioner. This was manifest to the

Bank of Hickory, and it was also perfectly manifest that, on the face of the paper, the money represented by the check did not belong to George B. Harper.

Ignoring the danger signals, the bank of deposit credited what it was bound to know was trust funds to the personal account of Geo. B. Harper, and by its subsequent actions aided and abetted the trustee in an unlawful application of trust funds to the payment of his private debts. If Harper had survived, and a grand jury investigation had followed his failure to account for the trust funds, what would have been the result? The answer is obvious. Appellees, the beneficiaries of the fund, could have proceeded against Harper, if living, or, having traced the funds to appellant, taking the money with full notice, they can also proceed against the bank.

*Affirmed.*