678 So.2d 693 (1996)
Ben COLLIER, as trustee of the Kay Hendrick Currie Trust, the Roger Hendrick Currie Trust, the James Gilbert Currie Trust, and the Benjamin Guilbert Currie Trust, Kay Hendrick Currie, Roger C. Hendrick, James G. Hendrick, and Benjamin G. Currie
v.
TRUSTMARK NATIONAL BANK.
No. 93-CA-00123-SCT.
Supreme Court of Mississippi.
July 25, 1996.
*694 Mary Marvel Fyke, Maxey Wann & Begley, Jackson, for Appellant.
Robert C. Williamson, Jr., Williamson Law Firm, Jackson, for Appellee.
En Banc.
DAN LEE, Chief Justice, for the Court:
Mississippi allows the creator of a trust the right to place her absolute trust in an unworthy trustee. Unfortunately, such is this case.
The Appellants' appeal arises from a January 25, 1993, order of the Hinds County Circuit Court, First Judicial District, granting Trustmark National Bank's motion for summary judgment. The Appellants ("Hendricks") sought compensation from Trustmark after the family's accountant and trustee of its four trust accounts systematically embezzled funds from the trust accounts and placed the funds into his personal checking account. We find that the lower court properly granted summary judgment for Trustmark because there exists no genuine issue as to whether Trustmark had actual knowledge of the trustee's wrongdoing. Accordingly, we affirm the circuit court's finding that Trustmark was entitled to summary judgment as a matter of law.

FACTS
On December 27, 1983, Kathleen S. Hendrick established Irrevocable Trusts for her only child, Kay Hendrick Currie, and each of her three grandsons, James Gilbert Currie, Roger Hendrick Currie and Benjamin Guilbert Currie.[1] Kathleen named her accountant, James Ethridge Moss, Sr., as trustee and vested him with broad powers under the terms of the trust instruments. In 1984, checking accounts were opened and checks were printed in the style of each account for each of the four trusts at the downtown Jackson offices of Trustmark, then First National Bank. These accounts were styled James E. Moss, Sr., Trustee of Kay Hendrick Currie Trust; James E. Moss, Sr., Trustee of Roger Hendrick Currie Trust; James E. Moss, Sr., Trustee of James Gilbert Currie Trust; and James E. Moss, Sr., Trustee of Benjamin Guilbert Currie Trust.
Between 1983 and 1985, Mrs. Hendrick deposited $30,000 in each account, for a total of $120,000. Beginning on May 22, 1984, Moss began writing checks on the Hendrick trust accounts and depositing them into his *695 personal checking account, styled Mr. or Mrs. James E. Moss. In October of 1989, Moss admitted to Kay Currie that he had depleted virtually all of the assets of the four trust accounts.
On December 11, 1990, the replacement trustee, Ben Collier, and the various trust beneficiaries filed a complaint against Trustmark in the Hinds County Circuit Court, alleging a breach of the checking account contract in allowing withdrawals not consistent with ownership of the accounts; gross negligence in failing to supervise and train its employees to deter misappropriation of customers' funds; and conversion in allowing Moss to remove funds from the trust accounts and deposit them into his own account.
During the course of discovery, Moss stated that there was no particular pattern to his withdrawals; rather he would deposit money from the trust accounts into his personal account periodically when he needed it for his family's living expenses. These transactions took place at various Trustmark branches: downtown, South State Street and Highland Village. Although Moss most often used the Highland Village drive-up window, he stated that he was not personally acquainted with any of the tellers and did not know any of their names. Moss did not recall anyone ever questioning him about the withdrawals or deposits.
Trustmark filed a motion for summary judgment on March 25, 1991, asserting that it was not a party to the trusts; that Moss was authorized by the trust documents to open the checking accounts and write checks on the accounts; that there was no evidence that any Trustmark employee had actual knowledge that Moss was acting outside his powers as trustee; and that Trustmark was not responsible to trust beneficiaries for the honesty of their trustee. Trustmark's motion was supported by the pleadings and responses of the parties, copies of trust agreements, and an affidavit by T. Harris Collier, III, General Counsel for Trustmark, averring that the funds in the accounts were not subject to administration or supervision by the bank; that the bank had neither the right nor the obligation to restrict payment of checks drawn on the accounts; and that there were no longer any records which might identify tellers who handled any of Moss' transactions.
Later, Trustmark filed its second motion for summary judgment seeking to dismiss the Hendricks' punitive damages claim. Trustmark also filed a motion in limine to exclude any references to Moss' son's employment by Trustmark and to preclude the Hendricks from calling as an expert witness Millie Burtschell, retired Manager of Deposit Guaranty National Bank's downtown Jackson office, who had opined that a well-trained teller would have been suspicious of Moss' transactions.
In support of its brief in opposition to Trustmark's motions for summary judgment, the Hendricks submitted Moss' deposition outlining the establishment of the trusts and his subsequent depletion of the trust assets; copies of the checks and deposit slip for Moss' first withdrawals from the accounts; Trustmark's answers and objections to the Hendricks' first set of interrogatories; and the deposition of Patricia Paris, Vice President of Branch Operations at Trustmark.
A hearing on the motion for summary judgment was held on January 8, 1993. The circuit court found that the facts were insufficient for the Hendricks to meet their burden of showing that Trustmark had actual knowledge of any improper transactions by Moss. These findings were incorporated by reference into the circuit court's January 25, 1993, order granting Trustmark's motion for summary judgment and dismissing the Hendricks' claims with prejudice.

STANDARD OF REVIEW
The lower court may grant summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Miss. R. Civ. P. 56(c). On appellate review, this Court reviews the record de novo to determine if the trial court erred in granting summary judgment. Downs v. Choo, 656 *696 So.2d 84, 85 (Miss. 1995) (citing Mantachie Nat. Gas v. Miss. Valley Gas Co., 594 So.2d 1170, 1172 (Miss. 1992)). "The movant and non-movant bear the burdens of production corresponding to the burdens of proof they would bear at trial." Skelton v. Twin County Rural Elec., 611 So.2d 931, 935 (Miss. 1992) (citing Palmer v. Biloxi Regional Medical Center, Inc., 564 So.2d 1346, 1355 (Miss. 1990)). The party seeking summary judgment has the burden of persuading the court that there are no genuine issues of material fact and that they are, based upon the facts before the court, entitled to judgment as a matter of law. Daniels v. GNB, Inc., 629 So.2d 595, 600 (Miss. 1993).

DISCUSSION
In the case sub judice, the trust clearly has a cause of action against Moss for his breach of his fiduciary duty. However, that is not the question now before this Court. Instead, we must decide whether the circuit court correctly found that the Hendricks failed to satisfy their burden of persuasion by putting forth evidence which would demonstrate that Trustmark had "actual knowledge" of Moss' misdeeds.
To decide the issue before us, we need only look to Miss. Code Ann. § 91-9-115 (1972) and Miss. Code Ann. § 81-5-53 (1972). Section 91-9-115 (1972), governs a third party's duty when dealing with a trustee and provides:
With respect to a third person dealing with a trustee or assisting a trustee in the conduct of a transaction, the existence of trust powers and their proper exercise by the trustee may be assumed without inquiry. The third person is not bound to inquire whether the trustee has power to act or is properly exercising the power; and a third person, without actual knowledge that the trustee is exceeding his powers or improperly exercising them, is fully protected in dealing with the trustee as if the trustee possessed and properly exercised the powers he purports to exercise. A third person is not bound to assure the proper application of trust assets paid or delivered to the trustee.

(Emphasis added). Miss. Code Ann. § 81-5-53 (1972), governs a bank's duty when a fiduciary executes a check in his fiduciary capacity and makes himself the payee of the check. This section provides:

A bank dealing, whether to its own benefit or otherwise, with, through or under any person, who is or may be an agent, trustee, guardian, executor, administrator, or other fiduciary, or a corporate officer, agent or employee, or a partnership member or representative, shall not be deemed to have notice of or be obligated to inquire as to any lack of or limitation upon the power of such person by reason in and of itself, either of the fact that such person has executed in his representative capacity and is himself the payee or indorsee of any check, bill, note or other promise or order, or of the use of descriptive words in connection with his deposit account or accounts, or in connection with any transfer, certificate or memorandum thereof, or in connection with any signature or indorsement of such person.
(Emphasis added).
The trial judge in the case at bar found that the Hendricks failed to shoulder their burden and put forth evidence which would allow a jury to find that Trustmark had "actual knowledge" of the trustee's wrongdoing. We agree.
Section 91-9-115 was enacted by the Mississippi Legislature in 1966 and is an integral part of the Uniform Trustees' Powers Act. At least six other jurisdictions[2] have enacted the Uniform Trustees' Powers Act, and they, like Mississippi, have not interpreted their equivalent to our Miss. Code Ann. § 91-9-115 (1972). Therefore, we must determine Section 91-9-115's meaning. We also note that this Court has not interpreted Section 81-5-53 since its enactment in 1934 and thus, we must also determine its meaning.
The first sentence of Section 91-9-115 states that a third party dealing with a *697 trustee can presume that the trustee has the power to perform the transaction at hand and that the trustee is acting within his authority. The second sentence expressly states that a third party dealing with a trustee has no duty to inquire into the trustee's authority to perform an act. Moreover, the third party is protected in his dealings with the trustee unless the third party has "actual knowledge" that the trustee is exceeding or improperly exercising his power in the challenged transaction(s). The third sentence quite simply states a third person is not obligated to ensure that the trustee properly applies trust funds.
The Hendricks argue that there was sufficient evidence which would allow a jury to find that Trustmark had actual knowledge of Moss's embezzlement. However, the Hendricks confuse "actual knowledge" with "constructive knowledge." Specifically, they argue that their expert witness would testify that Trustmark should have known of Moss' improprieties. Thus, the question becomes which definition of actual knowledge does Miss. Code Ann. § 91-9-115 (1972) contemplate? We answer this question by adopting the definition of "actual knowledge" used by the Ohio Supreme Court in an analogous situation. The Ohio Supreme Court defined "actual knowledge" as:
... awareness at the moment of the transaction that the fiduciary is defrauding the principal. It means express factual information that funds are being used for private purposes in violation of the fiduciary relationship.

Master Chemical Corp. v. Inkrott, 55 Ohio St.3d 23, 563 N.E.2d 26, 30-31 (1990) (emphasis added) (internal quotation omitted) (quoting General Ins. Co. of America v. Commerce Bank of St. Charles, 505 S.W.2d 454, 457 (Mo. App. 1974)).
The Hendricks argue that Moss' actions, i.e., writing checks on the trust account and depositing them into his personal account, should have caused Trustmark to investigate whether Moss was exceeding or improperly exercising his fiduciary powers. Notwithstanding the Hendricks' assertion, Section 91-9-115 and Section 81-5-53 clearly place no duty upon Trustmark to inquire as to whether Moss has the authority to write checks on the fiduciary account and make them payable to himself. Specifically, Section 81-5-53 states that a bank is not "obligated to inquire as to any lack of or limitation upon the power of such person by reason in and of itself, either of the fact that such person has executed in his representative capacity and is himself the payee or indorsee of any check." Likewise, Section 91-9-115 places no duty on the bank, when dealing with a trustee, to inquire as to his authority to act in a particular manner.
Moreover, other jurisdictions and legal treatises have recognized that a trustee's writing a check to himself from a trust account is in and of itself insufficient to provide the bank with actual knowledge that the trustee is violating his fiduciary duty. For example, the Restatement [Second] of Trusts, § 324 comment g (1957), states:
If a bank in which trust funds have been deposited makes payment on the checks of the trustee without notice that the trustee is committing a breach of trust in making the withdrawals or intends to misapply the funds so withdrawn, the bank is not liable for participation in the breach of trust.
... .
Similarly, if a trustee draws a check upon his account as trustee payable to himself personally, the bank is not bound to make inquiry whether the trustee is committing a breach of trust thereby, whether the check is presented by the trustee over the counter for payment, or is presented by a third person to whom it has been indorsed by the trustee, or is presented properly indorsed through another bank. Nor is the bank bound to make such inquiry where the trustee deposits the check in the bank to the credit of his personal account with the bank.

(Emphasis added). See also Peterson v. Pacific First Fed. S. & L. Ass'n, 23 Wash. App. 688, 598 P.2d 407, 410 (1979); Cassel v. Mercantile Trust Company, 393 S.W.2d 433, 440 (Mo. 1965); Bogert, Trusts and Trustees, 2d Ed., § 907, pp. 264-266. In the instant case, the Hendricks could pierce the statutory protection afforded Trustmark only if they could *698 show Trustmark had actual knowledge that Moss exceeded or improperly exercised his fiduciary powers when he deposited trust funds into his personal checking account. Miss. Code Ann. § 91-9-115 (1972). The mere fact that Moss executed checks on the trust accounts and deposited them into his personal account was insufficient by itself to require Trustmark to inquire into Moss' authority to perform the transaction. Miss. Code Ann. § 81-5-53. At the close of all discovery, the Hendricks simply could not put forth any evidence which would allow a jury to determine that Trustmark had actual knowledge "at the moment of the transaction[s] that the fiduciary [was] defrauding the principal." Master Chemical Corp., 563 N.E.2d at 30-31.
The Hendricks' reliance upon Great Southern National Bank v. Minter, 590 So.2d 129 (Miss. 1991), is without merit. In Minter, an attorney who was serving as conservator of an estate deposited checks made payable to the conservatorship into his office trust account and then misappropriated the conservatorship funds. The estate filed suit against the bank seeking to recover the money the conservator had misappropriated. The bank sought summary judgment on the issue of its liability to the estate and the lower court refused to grant the motion. On appeal, we noted that the record was unclear as to what, if any, discovery had been conducted and we held that, under the circumstances, the trial judge had not abused his discretion in denying the bank's motion for summary judgment. Id. at 135-36. In the case sub judice, we note that discovery was completed by both parties. In fact, the trial court granted the Hendricks additional time to conduct discovery and only after this additional time was granted was Trustmark's motion for summary judgment filed. We cannot say here that the trial judge abused his discretion in granting Trustmark's motion for summary judgment.
Moreover, we note that today's case is also distinguishable from Minter because we did not therein reach or discuss the applicability of Miss. Code Ann. § 81-5-53 (1972). Here, however, there can be no doubt under the facts of this case that both Miss. Code Ann. § 81-5-53 (1972) and Miss. Code Ann. § 91-9-115 (1972), apply to the case at bar. When we evaluate these two statutes together, we conclude that the bank is protected in its dealings with fiduciaries unless the bank has actual knowledge that the fiduciary is improperly exercising or exceeding his authority. Constructive knowledge or notice is insufficient to pierce these two statutory protections afforded the bank.
Likewise, any reliance the Hendricks place upon Bank of Hickory v. McPherson, 102 Miss. 852, 59 So. 934 (1912), is misplaced. In McPherson, this Court looked to the common law and held the defendant bank liable for the fiduciary's misappropriation of fiduciary funds when, from the "naked language of the check itself," the bank was made aware that the fiduciary was depositing fiduciary funds into his personal bank account. However, McPherson's holding that the bank was liable for the fiduciary's misuse of fiduciary funds because the bank had "actual knowledge" of the nature of the funds was superseded by two subsequent legislative enactments.[3]See Estate of Stamper, 607 So.2d 1141, 1148 (Miss. 1992) (Legislature may overrule decisions of this Court by enacting or amending statutes). Miss. Code Ann. § 91-9-115 and Miss. Code Ann. § 81-5-53 protected Trustmark from liability in its dealings with Moss and this statutory protection could be defeated by the Hendricks only if they could prove that Trustmark had "actual knowledge" and not "constructive knowledge" of Moss' breach of his fiduciary duties. The Hendricks failed to shoulder this burden. Accordingly, McPherson affords the Hendricks no relief.

CONCLUSION
The trust instruments in this case gave the trustee almost unlimited powers without requiring him to post a bond and without appointing an independent auditor to audit the trust accounts. Simply put, the creator of these trusts let the proverbial fox guard the henhouse. There is no proof in this record *699 which would allow a hypothetical juror to find by a preponderance of the evidence that Trustmark had actual knowledge that Moss was embezzling from the trust at the time of each transaction. Master Chemical Corp., 563 N.E.2d at 30-31. Without evidence of this, the Hendricks cannot legally pierce the statutory protection afforded Trustmark in its dealings with the Hendricks' former trustee. Accordingly, we hold that the lower court properly granted Trustmark's motion for summary judgment, and the lower court's judgment is hereby affirmed.
AFFIRMED.
PRATHER, P.J., and PITTMAN, BANKS, JAMES L. ROBERTS, Jr., SMITH and MILLS, JJ., concur.
McRAE, J., dissents with separate written opinion joined by SULLIVAN, P.J.
McRAE, Justice, dissenting:
I disagree with the majority's conclusion that Trustmark was entitled to summary judgment as a matter of law. Notwithstanding the impediments to discovery created by the bank, the majority contends that the Hendricks were unable to meet their burden in putting forth sufficient evidence to create a jury issue of whether Trustmark National Bank had "actual knowledge" that Moss was "improperly" exercising his powers as trustee. By so finding, the majority fails to look at the evidence in a light most favorable to the Hendricks and merely rubber stamps Trustmark's position that actual knowledge requires "express information of a fact." Colby v. Riggs National Bank, 92 F.2d 183, 184 (D.C. Cir.1937). Accordingly, I dissent.
Contrary to the majority's assertions, the Hendricks have not confused "actual knowledge" with "constructive knowledge." Indeed, they acknowledge that they do not perceive Trustmark as a "guarantor" of Moss' propriety and further, that they "do not rely simply on an argument attributing to Trustmark information which Trustmark agents did not have but which they would have had if they had conducted a full `inquiry'." Focusing instead on the real issue in this case  what constitutes actual knowledge, the Hendricks correctly begin with the premise articulated in Bank of Hickory v. McPherson, 102 Miss. 852, 59 So. 934, 936 (1912), that the actual knowledge requirement for liability was satisfied by "the naked language of the check itself." Thus, the mere fact that Moss was depositing checks from accounts designating him as trustee directly into what was clearly his personal account is, in and of itself, evidence that the bank had the requisite notice of Moss' improprieties.
In Great Southern National Bank v. Minter, 590 So.2d 129 (Miss. 1991), we reversed the trial court's grant of summary judgment against a bank on the issue of "whether a bank is liable where it accepts for deposit to an attorney's trust account, on the attorney's endorsement, checks made payable to an estate, in care of, or "c/o" the attorney, where the attorney is in fact the conservator of the estate and where the attorney subsequently misappropriates proceeds from the account including the proceeds of the check in question." Although distinguishable from the case sub judice in that the check in Minter was intended for deposit in an estate account, as opposed to having been drawn upon the account, the basic factual scenario is the same: a person acting in a fiduciary capacity signed a check that in some way indicated his relationship to the account for which the check was intended, deposited the check into another account to which he had personal access and subsequently, misappropriated the funds.
The Minter court reiterated that "a bank may assume that a person acting as a fiduciary will apply entrusted funds to the proper purposes and will adhere to the conditions of the appointment." Id. at 134, quoting Matter of Knox, 64 N.Y.2d 434, 477 N.E.2d 448, 451, 488 N.Y.S.2d 146, 149 (1985). Given that assumption, emphasis was placed on the requirement that the bank have some actual knowledge or notice of the fiduciary's wrongdoing. Again turning to Knox, we noted that:
In general, a bank may assume that a person acting as a fiduciary will apply entrusted funds to the proper purposes and will adhere to the conditions of the appointment. A bank is not in the normal *700 course required to conduct an investigation to protect funds from possible misappropriation by a fiduciary, unless there are facts  not here present  indicating misappropriation. In this event, a bank may be liable for participation in the diversion, either by itself acquiring a benefit, or by notice or knowledge that a diversion is intended or being executed.
Minter, 590 So.2d at 134, quoting Knox, 477 N.E.2d at 450-451, 488 N.Y.S.2d at 148-149. See also Eyrich v. Capital State Bank, 67 Miss. 60, 73, 6 So. 615, 618 (1889)(requiring actual knowledge or fraudulent purpose for bank to be liable for paying out funds on checks signed by one authorized to draw upon the account). Further, looking at the Restatement of Trusts,

If the trustee deposits trust funds in a bank, the bank is liable for participation in the breach of trust in receiving or in permitting the trustee to withdraw the trust funds, where the trustee commits a breach of trust in making the deposit or withdrawal, if, but only if, the bank received the deposit or permitted the withdrawal with notice of the breach of trust.

Minter, 590 So.2d at 135, quoting Restatement of Trusts § 324 (1935)(emphasis added).
Summary judgment in favor of Minter was reversed and the trial court's denial of the bank's motion for summary judgment was affirmed because this court "[was] left with the view that the facts have not been sufficiently explored." Minter, 590 So.2d at 135. In particular, the record did not indicate what discovery had been done to determine the nature of the withdrawals made by Drake, the trustee, or "[w]hat, if any knowledge the bank had regarding Drake's general conduct which might have put it on notice sufficiently to require action at some point which would have been of benefit to the plaintiff." Minter, 590 So.2d at 135-136.
In the case sub judice, the Hendricks presented deposition testimony that a well-trained teller should have been alerted to a possible problem by the deposit of trust checks into the trustee's personal account. The Hendricks' efforts to glean additional information appear to have been thwarted by Trustmark's frankly unresponsive answers to interrogatories: information about training and supervision of tellers objected to as not relevant; names of tellers or other employees not available because records allegedly could not be located; information about the trust accounts objected to as unduly burdensome and expensive; and information regarding Moss's personal account objected to as confidential because the Mosses had not agreed to release it. In Minter, we stated,
[E]ven where what is before the court does not indicate a genuine dispute of material fact and the movant is technically entitled to summary judgment, the trial court would nevertheless be justified in denying summary judgment when, in its view, a full exposition of the facts may result in a triable issue or is warranted in the interest of justice. Brown v. McQuinn, 501 So.2d 1093, 1095 (Miss. 1986).
Minter, 590 So.2d at 135. We are reminded that "[a]ll motions for summary judgment should be viewed with great skepticism and if the trial court is to err, it is better to err on the side denying the motion." Simmons v. Thompson Machinery of Mississippi, Inc., 631 So.2d 798, 801 (Miss. 1994), quoting Claiborne County Board of Education v. Martin, 500 So.2d 981, 981 (Miss. 1986). Summary judgment is appropriate only when there are no genuine issues of material fact. Owen v. Pringle, 621 So.2d 668, 670 (Miss. 1993); Brown v. Credit Center Inc., 444 So.2d 358 (Miss. 1983). The evidence in the record  admissions in the pleadings, answers to interrogatories, depositions, affidavits  is to be viewed in a light most favorable to the non-moving party, who has the benefit of every reasonable doubt. Simmons v. Thompson Machinery of Mississippi, Inc., 631 So.2d 798, 801-802 (Miss. 1994). Looking, as we must, at the evidence  or lack of it  in a light most favorable to the Hendricks, the non-moving party, I would find that a more complete exposition of facts would result in a triable issue regarding notice or knowledge. Summary judgment, therefore, was not appropriate in this case. Accordingly, I dissent.
SULLIVAN, P.J., joins this opinion.
NOTES
[1] James Gilbert Currie is now known as James G. Hendrick, and Roger Hendrick Currie, as Roger c. Hendrick.
[2] These six states are: Arizona (Ariz. Rev. Stat. Ann. § 14-7237); Idaho (Idaho Code § 68-110); Kansas (Kan. Stat. Ann. § 58-1207); Oregon (Or. Rev. Stat. § 128.031); South Carolina (S.C. Code Ann. § 62-7-708); and Wyoming (Wyo. Stat. § 4-8-10).
[3] Laws, 1934, ch. 146, sec. 40 (now codified at Miss. Code Ann. § 81-5-53 (1972)), and Laws, 1966, ch. 372, § 7 (now codified at Miss. Code Ann. § 91-9-115 (1972)), respectively.