848 So.2d 873 (2002)
Anthony WATSON, Appellant,
v.
Margaret JOHNSON, Appellee.
No. 2001-CA-01400-COA.
Court of Appeals of Mississippi.
December 17, 2002.
Rehearing Denied March 18, 2003.
Certiorari Denied June 26, 2003.
*874 Jonathan B. Fairbank, Jackson, attorney for appellant.
William C. Griffin, Juliette Veronica Wilson, Jackson, attorneys for appellee.
Before KING, P.J., IRVING, and BRANTLEY, JJ.
BRANTLEY, J., for the court.
¶ 1. Anthony Watson sued Margaret Johnson for damages arising from an automobile accident. The Hinds County Circuit Court entered an order for summary judgment in favor of Johnson. Watson appeals to this Court asserting that the trial court erred in its grant of summary judgment. Finding no error, we affirm.

FACTS AND PROCEDURAL HISTORY
¶ 2. The evidence is uncontradicted that Anthony Watson and Margaret Johnson were involved in a collision of their motor vehicles on April 26, 1995. On April 23, 1998, Watson filed a complaint, maintaining that the accident was caused by Johnson's negligence and that, as a result, he was injured. Watson particularly sought compensation for past and future medical expenses incurred to treat the injury, for physical pain and suffering, for mental pain and suffering, for property damage to his automobile, and for loss of enjoyment of life. On September 21, 1998, Johnson countered denying any negligence in the matter and stated that she was without sufficient knowledge to form a belief as to the truth of Watson's allegation that he was injured or suffered any damages. At this time, Johnson also filed interrogatories and requests for production of documents.
¶ 3. Watson did not respond to Johnson's interrogatories and requests for production of documents and on January 13, 1999, Johnson filed a motion to compel discovery, which was granted in an order dated March 8, 1999, wherein, the court ordered Watson to respond to discovery by March 18, 1999. After an agreed extension between *875 the parties, on March 26, 1999, Watson replied to the interrogatories and provided medical records.
¶ 4. In his answers, he specifically stated how the accident occurred, listed damages and injuries, particularly claiming compensatory damages for pain and suffering in his lower back, neck, and both legs from the aggravation of existing injuries, for costs and repairs of his automobile, for mental suffering and exacerbation of his depression, and for past and future medical expenses. Watson further stated that the persons listed in the police report, his parents and children, and his physicians could bear witness to the allegations in his complaint. In addition, Watson stated that his medical providers could bear witness to the expenses that he has incurred in the treatment of his injuries, but that due to his pre-existing injuries he was segregating those expenses relating to this collision and would supplement his answer in a timely manner. He did not list or identify the medical providers or the individuals listed in the police report. As to Johnson's request for a list of Watson's expert witnesses, Watson stated that he "has not yet decided those persons he will call to render expert testimony at trial."
¶ 5. In response to the request for documents, Watson produced medical records dating from 1992 to 1997. The records that pre-date the accident are related to treatment for injuries from a slip and fall accident which occurred on May 20, 1992, and an accident which occurred on July 7, 1992, where Watson's automobile was rear-ended by a city bus. The records that post-date the accident specifically note that the treatment and accompanying bills pertain to a work-related accident which occurred on May 20, 1992. The records do not state that the treatment or bills relate to the accident in question. There is no indication from the medical records that Watson had been treated or diagnosed for injuries resulting from the April 1995 accident.
¶ 6. As a result, on April 12, 1999, Johnson inquired by letter into the omission of any medical providers for the claimed injuries of the accident in question. On April 15, 1999, via hand delivery, Watson's counsel forwarded medical documents and a letter to the defense stating that all medical records in his possession concerning Watson had been submitted. The attached second set of produced records were identical to the documents previously produced.
¶ 7. Subsequently, on July 16, 1999, Johnson filed a motion to dismiss or in the alternative for summary judgment. In the motion, Johnson requested that the case be either dismissed for failure to comply with the court's order compelling discovery or, alternatively, that summary judgment be granted because no genuine issue of material fact existed. This motion is noted in the index, but does not appear in the record. In response, Watson stated that he intended to introduce testimony of Dr. Pierre, his treating chiropractor, to testify as to the culpability of the various accidents in producing Watson's back pain. He further claimed that the produced medical records support his claim that pre-existing injuries were aggravated and that the medical records created a factual issue as to whether the treatment after the accident related to those prior accidents or to the accident in question. He also claimed that his testimony is credible and that he will testify at trial that the accident aggravated his injuries.
¶ 8. On October 8, 1999, in a brief order, the trial court denied Johnson's motion to dismiss or in the alternative summary judgment. A transcript of the hearing does not appear in the record and the circuit court did not give a detailed reasoning *876 for its decision. Subsequently, on December 13, 1999, the trial court determined that the dispute was appropriate for mediation and therefore, entered an order of referral requiring the parties to complete the mediation in good faith by January 30, 2000. An order was later granted to continue the completion of mediation. The first session of mediation occurred on June 14, 2002. After approximately one hour had passed, the mediator ended the session when Watson abruptly left the room because of an illness. There is no transcript available of the meeting. A second session was scheduled for July 17, 2000, but according to Johnson, Watson stated that he would only attend the session if negotiations began at $1,000,000. When these terms were rejected by Johnson, Watson refused to participate. The mediator then concluded that scheduling any future mediation sessions would be pointless.
¶ 9. On August 4, 2000, Johnson properly noticed Watson for a deposition on September 13, 2000, and stated that the set date would not be changed unless Watson gave a precise alternate date. On the morning of the deposition, Watson's counsel informed Johnson that Watson would not be able to attend the deposition because Watson was "hearing too many voices in his head." Johnson's counsel informed Watson's counsel that he was going to proceed regardless of Watson's attendance. Watson's counsel appeared for the deposition without him and a record was made of his absence.
¶ 10. Consequently, on January 17, 2001, Johnson filed a renewed motion for summary judgment or, in the alternative, motion for dismissal for failure to appear at a deposition or to compel appearance at a deposition or, in the alternative, a motion for sanctions for failure to appear at a court ordered mediation. Johnson, moved for summary judgment on the grounds that no genuine issue of material fact existed as to Watson's claims that he sustained injuries and/or any measure of damages whatsoever. In particular, Johnson contended that, notwithstanding the court's order compelling discovery and mediation, to date no credible evidence had been proffered to support Watson's claims that he sustained any measure of damages whatsoever in the accident from which this lawsuit arises.
¶ 11. In response, Watson stated that he would present evidence that the exhibits dated 1995 to 1997 are for the treatment of the aggravation of his back condition and that when competent to testify he would present evidence as to his pain, suffering and mental anguish and property damage. Furthermore, Watson stated that he would still be able to produce testimony that the accident happened, that Johnson's negligence contributed to the accident, and that he suffered some injury as a result. Watson also readily agreed to appear at another scheduled deposition.
¶ 12. On April 10, 2001, a final judgment of dismissal with prejudice was entered. Wherein, the court stated that after considering the pleadings, evidence, and arguments of counsel, summary judgment was appropriate as a matter of law. No other details were given for the ruling and no record was made of the motion hearing. Following this order, Watson filed a motion to reconsider on April 20, 2001, and on August 7, 2001, an order was entered denying the motion to reconsider after considering the pleadings and the arguments. Thereafter, Watson filed his notice of appeal on August 29, 2001, of the summary judgment and the order denying the motion to reconsider.

ANALYSIS
¶ 13. The lower court is vested with the discretion to grant a summary judgment *877 "if the pleadings, depositions, answers to interrogatories and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Collier v. Trustmark Nat'l Bank, 678 So.2d 693, 695 (Miss.1996); M.R.C.P. 56. The standard of review on appeal when a trial judge grants a motion for summary judgment allows this Court to review the record de novo to determine if there was error on the part of the trial judge in granting the motion. Id. In a motion for summary judgment, the movant and non-movant maintain burdens of production paralleling their burdens of proof at trial. Id. at 696.
¶ 14. In a negligent action, the plaintiff bears the burden of producing evidence sufficient to establish the traditional elements of duty, breach of duty, proximate cause and injury. May v. V.F.W. Post No. 2539, 577 So.2d 372, 375 (Miss.1991). Therefore, when summary judgment is sought by the defendant, the court must determine whether the plaintiff has produced supportive evidence of significant and probative value; this evidence must show injury, that the defendant breached the standard of care and that such breach was the proximate cause of her injury. Palmer v. Anderson Infirmary Benev. Ass'n., 656 So.2d 790, 794 (Miss.1995).
¶ 15. These thoughts in mind, we turn to apply the law regarding Johnson's alleged liability to the facts before us, viewed most favorably to Watson. In the present case, Johnson asserted that no evidence was submitted to support the damage element of the negligence action. The other elements of negligence were not targeted by Johnson's renewed motion for summary judgment. Therefore, we specifically look to the record to see if there was a basis from which a jury could reasonably conclude that damages existed as a result of the accident in question.
¶ 16. As stated, Watson's answer to interrogatories include contentions of how the accident occurred and the alleged compensatory damages, such as aggravation of existing injuries, costs of repairs of his automobile, pain and suffering, mental suffering and aggravation of his depression, and past and future medical expenses. He further stated that his medical providers could bear witness to the expenses that he has assumed in the treatment of injuries, that his parents and children are personal witnesses to his pain, suffering, and depression, and that the witnesses listed on the police report had knowledge pertaining to the accident. Watson also stated that he would supplement his answers in several areas. In particular, he stated that as to the medical bills he still was segregating those expenses related to the collision in question and those expenses that were due to pre-existing injuries. He further stated that he had not yet determined those persons he will call to render expert testimony at trial.
¶ 17. In addition, in Watson's response to Johnson's first motion for summary judgment, Watson stated that he intended to call Dr. Pierre, his chiropractor, to testify as to the culpability of the various accidents in regard to Watson's back pain. He also claimed that the medical records supported his claim that pre-existing injuries were aggravated and created a factual issue as to whether treatment which occurred after the accident related to those prior accidents or to the accident in question.
¶ 18. As stated, Watson claims that these sworn statements in his answers are sufficient to create an issue as to whether he sustained any damages. "To have power to generate a genuine issue of *878 material fact," the "affidavit or otherwise" (e.g., depositions and answers to interrogatories) must: (1) be sworn; (2) be made upon personal knowledge; and (3) show that the party providing the factual evidence is competent to testify. Magee v. Transcontinental Gas Pipe Line Corp., 551 So.2d 182, 186 (Miss.1989). In the present case, Watson's answers to interrogatories are sworn, made upon personal knowledge, and Watson appeared to be competent at the time his answers were submitted. However, the Mississippi Supreme Court in Travis v. Stewart, 680 So.2d 214 (Miss.1996), in dealing with the issue of the proof necessary to support a summary judgment, stated that bare assertions are simply not enough to avoid summary judgment. The non-movant may not rest upon allegations or denials in his pleadings. Travis, 680 So.2d at 218. A non-moving party must show more than a mere scintilla of colorable evidence, i.e., they must produce evidence upon which a fair-minded jury could find for them. Van v. Grand Casinos of Mississippi, Inc., 767 So.2d 1014, 1018 (¶ 7) (Miss.2000). Unsubstantiated assertions are not enough. Id.
¶ 19. We now look to see if Watson presented any evidence to support the above assertions. As to the property damage claim, Watson only asserted that the right front of his vehicle was damaged and that he would "timely" provide the monetary amount. Watson never supplemented his answer. He also never provided any photographic evidence of the claimed property damage. He further never provided his own opinion or another's as to the value of the automobile prior to the accident or an opinion of the value of the automobile after the accident. More importantly, there were no bills of repair submitted, no affidavits provided from mechanics who repaired the vehicle, and no affidavits provided from the witnesses listed on the police report stating that there was visible automobile damage. In addition, he never provided any information concerning repairs and that the repairs, if any, were reasonable and necessary.
¶ 20. As to the personal injury claim, Watson did not provide any medical evidence that he suffered personal injuries from the accident in question other than a series of medical bills that he reported to be related to the accident. However, after review, each record states that the treatment was for an injury that occurred in 1992, three years before the accident in question. No diagnosis of any claimed injury to his body as a result of the accident by any medical provider was presented either in the records post dating the accident or by affidavit at the time of the renewed summary judgment hearing. Furthermore, no affidavits were presented from any witnesses that Watson sustained any injuries whatsoever to support his assertions. Although, he stated in his response to Johnson's first motion for summary judgment, that his chiropractor, Dr. Pierre, would testify as to the bills relating to the 1995 accident in question, no testimony from Dr. Pierre was ever presented. In addition, Watson never supplemented his answers as to his personal injury claims as he stated he would in March of 1999.
¶ 21. We also note that although it does not appear in the record that a trial date had been set or that a discovery schedule had been given, the trial judge did grant an order to compel discovery in March of 1999 and entered an order in December of 1999 to seek and complete mediation in good faith. In addition, as of January 17, 2001, Watson still had not supplemented his answers or provided the required proof to substantiate his claims of property damages and personal injuries. Watson also never sought a continuance to obtain evidence *879 that would substantiate his claims of damages and injuries.
¶ 22. Watson was required to bring any information he could attain to the court's attention prior to the summary judgment hearing. Watson also had an obligation to present the type of evidence that would support his assertions before the hearing on the renewed summary judgment motion since it appears to have been readily available. Since he did not, we must presume any evidence that he failed to present was detrimental to his case. Herrington v. Leaf River Forest Products, Inc., 733 So.2d 774, 779(¶ 19) (Miss.1999). The time when Watson could have submitted evidence to support his claim is past. As the Supreme Court has stated before, the hearing on a summary judgment motion is the flashpoint when the plaintiff's proof is evaluated. Brewton v. Reichhold Chemicals, Inc., 707 So.2d 618, 620(¶ 6) (Miss.1998). Since Watson failed to provide the lower court with sufficient evidence to support his claim at the hearing, there were no factual questions in issue over which reasonable jurors could disagree.
¶ 23. Furthermore, regarding summary judgments, the Mississippi Supreme Court has stated:
In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.
Galloway v. Travelers Ins. Co., 515 So.2d 678, 683 (Miss.1987).
¶ 24. In the present case, we conclude that according to the record Watson was given ample time to present any evidence substantiating his claims of damages and personal injuries and that in that time period he failed to bring forward any significant probative evidence demonstrating the existence of a triable issue of fact as to the claims of damages or injuries to meet his burden. See Phillips v. Hull, 516 So.2d 488, 491 (Miss.1987). Watson had a duty to be more diligent and his unsubstantiated assertions were not enough to prevent summary judgment. Therefore, we find that the trial judge did not err in finding that summary judgment was appropriate, and accordingly, we affirm the decision of the trial court.
¶ 25. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS AND CHANDLER, JJ., CONCUR.