BARNES, J.,
 

 for the Court:
 

 ¶ 1. In these appeals, which were consolidated by order of the Court, we are called upon to determine if the chancellor correctly granted summary judgment to certain mineral owners and mineral leasees of real property in Wayne County, Mississippi, and in hereafter dissolving a receivership Specteum Oil, LLC (Spectrum Oil) had established on behalf of the purported descendants of Thomas (Bob) Davis. The chancellor, after initially granting Spectrum Oil’s motion for a receivership in favor of the descendants of Thomas (Bob) Davis and authorizing a mineral lease of the descendants’ interest in certain producing oil wells to Spectrum Oil, subsequently granted summary judgment in favor of the oil, gas, and mineral leasees and the mineral owners in their suit to remove the receivership as a cloud on their title. We shall reference the Appellees, who are the mineral owners and leasees of the property in question, collectively, as “Trinity USA.” The chancellor granted a default judgment against the descendants of Thomas (Bob) Davis and summary judgment against all other defendants finding no genuine issue that Thomas (Bob) Davis had had any descendants. Thus, there was no interest for Spectrum Oil to acquire and no need for the receivership, which the chancery court dissolved ab ini-tio.
 

 ¶ 2. In each appeal, Spectrum Oil presents the following issues for review, which we quote verbatim:
 

 I. THE CHANCERY COURT OF WAYNE COUNTY MISSISSIPPI HAS NO AUTHORITY TO GRANT PARTIAL SUMMARY JUDGMENT AGAINST APPELLANT, SPECTRUM OIL, LLC, DISSOLVING ITS RECEIVERSHIP LEASE AND EFFECTIVELY DISSOLVING THE RECEIVERSHIP FOR THE HEIRS OF THOMAS (BOB) DAVIS ESTABLISHED BY DECREE OF THE WAYNE COUNTY CHANCERY COURT ON THE BASIS THAT PROCESS BY PUBLICATION HAS FAILED TO PRODUCE AN HEIR OR DESCENDANT OF THOMAS (BOB) DAVIS.
 

 II. THE STATE OF MISSISSIPPI IS A NECESSARY PARTY PURSUANT TO MISSISSIPPI RULES OF CIVIL PROCEDURE RULE 19 AND SECTION 11-17-34 OF THE MISSISSIPPI CODE OF 1972 AS ANNOTATED AND AMENDED TO ANY EFFORT TO DISSOLVE A RECEIVERSHIP LEASE GRANTED BY PREVIOUS DECREE BY THE WAYNE COUNTY CHANCERY COURT.
 

 An additional issue was set out in the first case to be appealed:
 

 
 *1216
 
 III. MISSISSIPPI RULES OF CIVIL PROCEDURE RULE 12 REQUIRES THE WAYNE COUNTY CHANCERY COURT TO ALLOW TEN (10) DAYS TO FILE AN ANSWER AND DEFENSES AFTER DENYING A RULE 19 MOTION TO DISMISS.
 

 Finding no error, we affirm the chancellor’s judgments.
 

 SUMMARY OF FACTS AND PROCEDURAL HISTORY
 

 ¶ 3. Two producing oil wells were drilled on separate eighty-acre units of land in Wayne County. Ownership of two tracts of land, totaling 128 acres of these producing units, is involved in this litigation. On February 28, 2008, Spectrum Oil leased an undivided l/30th mineral interest in one of the two tracts at issue. On March 3, 2008, Spectrum Oil petitioned the Wayne County Chancery Court, in cause number 2008-53, for the appointment of the chancery clerk as the receiver for the mineral interest of the descendants of Thomas (Bob) Davis, deceased, a child of the original landowner, E.L. Davis.
 
 [1]
 
 Only the “unknown heirs, administrators, legal representative, successors, and assigns, if any” of Thomas (Bob) Davis were given notice, and this was done by publication three times in the county newspaper. No other “interested parties” as set out in Mississippi Code Annotated section 11-17-33(3) (Rev.2004)
 
 [2]
 
 were summoned. On April 8, 2008, the chancellor granted Spectrum Oil’s petition for a receivership and appointed the chancery clerk of Wayne County as the receiver for the interest of the descendants of Thomas (Bob) Davis. The order recites that Thomas (Bob) Davis, one of ten children born to E.L. Davis and his wife, Lacy Ann Kelly Davis, was born in 1878 and died in 1910. The order further states that E.L. Davis died intestate in 1937. According to the order, “It is believed that Thomas (Bob) Davis married Marguerite Rouse, and no one has been able to confirm if children were born to this marriage.” The order explained that if any descendants of Thomas (Bob) Davis were alive at the time of E.L. Davis’s death, they would own an interest in the property.
 
 [3]
 
 As part of the receivership judgment, the chancellor ordered the chancery clerk to execute a mineral lease to Spectrum Oil for which Spectrum Oil would pay $5,001 to the chancery clerk and ordered that any royalties which might be produced on the property be paid to the chancery clerk for the benefit of the descendants of Thomas (Bob) Davis.
 

 ¶ 4. By June 2008, Trinity USA, along with eighteen other owners of oil, gas, and mineral leases on the property in question,
 
 *1217
 
 and ten mineral owners, learned of the receivership. On June 25, 2008, they filed suit, in chancery cause number 2008-202, to remove the receivership as a cloud on their title and sought to dissolve the oil and gas lease given under the receivership. A deraignment of title set out in the petition showed that E.L. Davis a/k/a Elias L. Davis received the land in question in 1915 by warranty deed. E.L. and his wife, Lacy Davis, had ten children, but only six were alive at the time of E.L.’s death in 1937. Attached to the petition were affidavits from elderly children, grandchildren, and great grandchildren of E.L. and Lacy Davis who swore that growing up they had heard that Robert Thomas Davis a/k/a Thomas (Bob) Davis or Tom Davis was them uncle or great uncle and that he had died as a young man, but that they had never heard that he had any children.
 

 ¶ 5. In response to the complaint, Spectrum Oil filed a motion to dismiss for failure to join a necessary and indispensable party, the State of Mississippi. Despite summons by publication, no one answered the complaint claiming to be a descendant of Thomas (Bob) Davis. Upon request by Trinity USA, the chancery clerk filed an entry of default against any unknown descendants of Thomas (Bob) Davis.
 

 ¶ 6. Trinity USA thereafter filed a motion for default judgment against the descendants of Thomas (Bob) Davis and for summary judgment against all defendants. After a hearing held on August 27, 2008, the chancellor denied Spectrum Oil’s motion to dismiss and granted Trinity USA’s motion for a default judgment as to the unknown descendants of Thomas (Bob) Davis and its motion for summary judgment as to all defendants. In the default judgment, the chancellor found that Thomas (Bob) Davis died in 1910 leaving no heirs or descendants, and that his father, who owned the land, died some twenty-seven years later in 1937. Therefore, the chancellor found that because Thomas (Bob) Davis predeceased his father and had no descendants, Thomas (Bob) Davis and any reputed descendants had no claim or right to the land in question. As to the summary judgment, the chancery court found that neither Spectrum Oil nor any other defendant had submitted affidavits or other evidence to create a genuine issue for trial or a legitimate reason for failure to submit such affidavits. Spectrum Oil timely filed a notice of appeal which is docketed as appellate cause number 2008-CA-1624. No notice of appeal was filed by anyone claiming to be a descendant of Thomas (Bob) Davis.
 

 ¶ 7. Thereafter, Trinity USA filed a motion to intervene in the receivership proceeding, which the chancellor granted. Trinity USA’s motion for the court to rescind or dissolve the receivership was also subsequently granted and certified as a final judgment pursuant to Mississippi Rule of Civil Procedure 54(b).
 
 [4]
 
 Spectrum Oil timely filed a notice of appeal, which was docketed as appellate cause number 2008-CA-2155. Trinity USA’s counterclaim for damages for slander of title is still pending in the chancery court.
 

 ¶ 8. Thomas (Bob) Davis died on June 23, 1910, at thirty-two years of age. Among the documents in the record was a Harrison County marriage license showing
 
 *1218
 
 that R.T. Davis and Margurete
 
 [5]
 
 Rouse were married on December 19, 1907. Also, in the record is an article from the local Gulfport newspaper,
 
 The Daily Herald,
 
 which tells of Thomas (Bob) Davis’s tragic end. Thomas (Bob) Davis had moved from Wayne County, Mississippi, to an area near the Mississippi Gulf Coast. The newspaper account said that Thomas (Bob) Davis was murdered in the Airey Community of Harrison County. Apparently, Thomas (Bob) Davis was lured from his home by a co-worker who shot him five times and then ran over him with a horse and buggy. Incredibly, Thomas (Bob) Davis survived for several hours, during which time he identified his murderer. The article states that Davis left a wife who, before her marriage, was Miss Rouse, the daughter of J.P. Rouse of Gulfport. There was no mention of children. However, in the same article the purported murderer was said to be a widower having “several children” living with relatives in Gulfport.
 

 ¶ 9. We have carefully reviewed the records in both appeals and can find no evidence that Thomas (Bob) Davis had any surviving descendants as of the date of E.L. Davis’s death. The closest Spectrum Oil came to proving that Thomas (Bob) Davis even had any descendant was at a hearing on Spectrum Oil’s motion to reopen evidence that was held on November 10, 2008. Spectrum Oil called Lawrence Rouse, the nephew of Margurete Rouse Davis Haller,
 
 [6]
 
 who produced what he called “the Rouse family Bible.” Lawrence was asked if there was a reference in the births’ section of the Bible showing the birth of a Davis in 1908. He equivocated on his answer saying: “On the page of births there is a Robert Davis, 1908. To me it’s undecipherable.” On cross-examination, he admitted that he had never been told by any family members that his Aunt Margurete had any children. The attorney for Spectrum Oil asked the chancellor to inspect the Bible personally and look at the disputed birth entry. The chancellor said that it “appears to read Roy Robert Davis and it’s almost like something September, 1908. Then right under it appears to be another 1908. What I’m saying is, 1908 is written two times in connection with Roy Robert Davis.” A forensic document examiner testified about his review of the document. After his testimony, the chancellor gave his version of what the entry said and asked the expert if he agreed. The following exchange transpired:
 

 THE COURT: Let me give you my version of what it says. You tell me whether you agree with it or not. It says Roy Robert Davis, September the 8th, 1908. Then, under it there is a line and 9 dot 8 dot 1908.
 

 A. [the forensic document examiner]: That is what I believe. The same thing.
 

 The expert told the chancellor that the handwriting of the name and of the date 9.8.1908 was made by the same hand.
 

 
 *1219
 
 ¶ 10. The chancellor concluded that the evidence showed at most that Thomas (Bob) Davis and his wife “might” have had a child, with the only evidence being the listing in the family Bible. Further, the chancellor said that he had to “make a lot of assumption to even assume that he belonged to R.T. Davis,” but if there was a child born, the Bible notations show that it was either stillborn or died at birth. The chancellor then denied Spectrum Oil’s motion to reopen the evidence.
 

 ¶ 11. Additional facts will be given, as needed, during our discussion of the issues.
 

 ANALYSIS OF THE ISSUES
 

 ¶ 12. Spectrum Oil’s first argument is that the Wayne County Chancery Court lacked authority to grant partial summary judgment against it, thereby dissolving its receivership and lease for the descendants of Thomas (Bob) Davis on the basis that the process by publication failed to produce a descendant of Thomas (Bob) Davis. Spectrum Oil makes two arguments on this issue. First, Spectrum Oil claims that the chancellor erred by ruling that there must be a descendant of Thomas (Bob) Davis in order to sustain the receivership and the receivership lease pursuant to section 11-17-33. Spectrum Oil argues that the whole purpose of the receivership statute is to allow production of oil, natural gas, and other minerals to go forward in situations where title to minerals is uncertain. Spectrum Oil says that the statute creates the legal entity of a receivership so that mineral interests, whose title is uncertain, can be placed and reasonably leased for development while at the same time protecting any claimants who may come forward in the future. Otherwise, Spectrum Oil argues that no risktaker would invest in an oil and gas venture.
 

 ¶ 13. Trinity USA counters that the chancellor had good cause to dissolve the receivership because the chancellor found that Thomas (Bob) Davis predeceased his father and had no descendants; thus, there was no mineral interest to place into the receivership and, therefore, no need for the receivership, which was properly dissolved.
 

 ¶ 14. This Court applies a de novo standard of review to the granting or denying of a summary judgment by the trial court.
 
 Hill v. Carroll County,
 
 17 So.3d 1081, 1084 (¶ 7) (Miss.2009) (citing
 
 Channel v. Loyacono,
 
 954 So.2d 415, 420 (¶ 12) (Miss.2007)). Under Rule 56(c) of the Mississippi Rules of Civil Procedure, summary judgment is proper “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.”
 

 ¶ 15. The United States Supreme Court explained the application of the identical Rule 56(c) of the Federal Rules of Civil Procedure when it stated:
 

 [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party’s case, and on which that party will bear the burden of proof at trial. In such a situation, there can be “no genuine issue as to any material fact,” since a complete failure of proof concerning an essential element of the nonmoving party’s case necessarily renders all other facts immaterial. The moving party is “entitled to judgment as a matter of law” because the nonmoving party has failed to make a sufficient showing on an essential element of her
 
 *1220
 
 case with respect to which she has the burden of proof.
 

 Celotex Corp. v. Catrett,
 
 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
 

 ¶ 16. Trinity USA, as the movant, “has the job of persuading the court, first, that there is no genuine issue of material fact and, second, that on the basis of the facts established, [it] is entitled to judgment as a matter of law.”
 
 Fruchter v. Lynch Oil Co.,
 
 522 So.2d 195, 198 (Miss.1988). Spectrum Oil, as the nonmoving party, must support its claim by more than a “mere scintilla of colorable evidence,” but instead its evidence must be such that a fair-minded jury could return a favorable verdict.
 
 Wilbourn v. Stennett, Wilkinson & Ward,
 
 687 So.2d 1205, 1214 (Miss.1996) (citing
 
 Anderson v. Liberty Lobby, Inc.,
 
 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). “Bare assertions” are not enough to avoid summary judgment, and the non-movant may not rest upon the allegations or denials in its pleadings.
 
 Watson v. Johnson,
 
 848 So.2d 873, 878 (¶ 18) (Miss.Ct.App.2002) (citing
 
 Travis v. Stewart,
 
 680 So.2d 214, 218 (Miss.1996)).
 

 ¶ 17. With these standards in mind, we find that Trinity USA sustained its burden of proving that there was not sufficient evidence to establish an essential element of fact regarding Spectrum Oil’s claim to retain the receivership; the essential element being that there were descendants of Thomas (Bob) Davis who had a “clear right” to the mineral interests involved. That being the case, we must find that the chancellor was not in error in dissolving the receivership pursuant to section ll-17-33(5).
 
 [7]
 

 ¶ 18. To reach our conclusion, we consult the general law regarding receivers and receivership to determine this issue, as there is little Mississippi case law interpreting the receivership statutes. A receivership is a remedy where the court takes possession of the assets of the entity placed in receivership through a court-appointed receiver. 75 C.J.S.
 
 Receivers
 
 § 3 (2002). The purpose of the receivership is to preserve the property, which is the subject of the litigation, and to provide full protection to the parties’ rights to the property until a final disposition of the issues can be made.
 
 Id.
 
 A receivership will stand only when the party moving for it shows that it has a legal or equitable right to file for such relief.
 
 Clark v. Fleming,
 
 130 Miss. 504, 511, 94 So. 458, 460 (1923). Whether to appoint a receiver is completely within the chancellor’s discretion. Thus, an appellate court will not overturn such a decision unless it is clear that there has been an abuse of discretion by the chancellor.
 
 Id.
 
 In
 
 Clark,
 
 the supreme court said that the first showing that a plaintiff seeking a receivership must show is that he has a “clear right to the property itself.”
 
 Id.
 

 ¶ 19. It is on this very point that the issue must be resolved against Spectrum Oil. Spectrum Oil and its reputed claimants, the heirs of Thomas (Bob) Davis, have no interest in any mineral interests of the property in question simply because there are no descendants of Thomas (Bob) Davis. As noted in a leading encyclopedia, “[i]n order to justify the appointment of a receiver the plaintiff must be able to show that it has something more than a mere claim but rather a valid legal claim.” 65 Am.Jur.2d
 
 Receivers
 
 § 22 (2001). “Stated another way, the plaintiff must show a
 
 *1221
 
 reasonable probability of an ultimate judgment or success on the merits.”
 
 Id.
 
 Spectrum Oil completely failed to prove that Thomas (Bob) Davis had any descendants. The closest its proof got was a “maybe” which is not enough to show a valid legal claim. What was proven was that Thomas (Bob) Davis died in 1910 and did not have any descendants in 1937, when his father died and the land was divided. It is elementary property law that only a descendant of Thomas (Bob) Davis who was alive in 1937 when the landowner E.L. Davis died could be an heir to E.L. Davis and, thus, have an interest to be protected by a receivership. The proof shows that E.L. Davis’s son, Thomas (Bob) Davis, died as a young man without any issue by an apparent murder in 1910, some twenty years before his father’s death.
 

 ¶ 20. It is clear to this Court that Spectrum Oil failed to establish the first element necessary for the appointment of a receivership, that is, that it had a “clear right” to the property which is the subject of the receivership. In fact, Spectrum Oil failed to show that it had any legal or equitable right to the mineral interests through Thomas (Bob) Davis. Once the chancellor granted a default judgment against any descendants of Thomas (Bob) Davis and ruled there did not exist any genuine issue of material fact that Thomas (Bob) Davis had any descendants, there was no valid legal claim left for the receivership to protect. Therefore, we find that the chancellor did not abuse his discretion when he dissolved the receivership ab ini-tio, thereby voiding any mineral interest established by the receivership.
 

 ¶ 21. Furthermore, in moving to dissolve the receivership, Trinity USA noted that the appointment of the receivership was initially based upon what essentially was an ex parte filing. The record shows that prior to the appointment of the chancery clerk as receiver, Spectrum Oil gave notice only to the heirs or descendants of Thomas (Bob) Davis by publication. At the hearing, the chancellor had the clerk call for the heirs or descendants three times in open court. No one appeared. Section 11-17-33(3) states: “No receiver shall be appointed under the provisions of this section unless all interested parties who are not party to the petition shall be made defendants and all such defendants shall have been served with process of the court provided by law for cases in chancery court.”
 

 ¶ 22. As we read the statute, “all interested parties” would include not only descendants of Thomas (Bob) Davis, who might have benefitted by the proceeding, but also the other descendants of E.L. Davis (and their successors) who would be detrimentally affected by the receivership. Had this subsection of the statute been followed, the receivership would most probably not have been granted as the twenty-nine mineral owners and lessees would have presented their proof as to the lack of the existence of any descendants of Thomas (Bob) Davis.
 

 ¶ 23. Spectrum Oil’s second issue on appeal is that the State of Mississippi was a necessary party to the receivership and subsequent proceedings pursuant to Rule 19 of the Mississippi Rules of Civil Procedure and Mississippi Code Annotated section 11-17-34 (Rev. 2004), which provides that unclaimed royalties in a receivership escheat to the State after being unclaimed for ten years. Our decision on the first issue, that the receivership was void ab initio, makes the consideration of this issue unnecessary, as we have found that there is no interest to be placed into receivership; thus, no royalties could ever escheat to the State. However, we will provide a
 
 *1222
 
 brief review as to other reasons why this argument fails.
 

 ¶ 24. Spectrum Oil cannot call upon Rule 19 to aid its argument.
 
 [8]
 
 Rule 81(a)(12) of the Mississippi Rules of Civil Procedure deals with the limitation of the applicability of the rules and it specifically states: “These rules apply to all civil proceedings but are subject to limited applicability in the following actions which are governed generally by statutory procedures!:] proceedings brought under section! ] ... 11-17-33.” The chancellor recognized the specious nature of Spectrum Oil’s argument that the State needed to be a part of the proceedings, as is shown in the following exchange with Spectrum Oil’s attorney:
 

 THE COURT: The interest that we’re talking about would be the Davis interest. Correct?
 

 MR. RATCLIFF: Yes, sir. Presently held by the clerk.
 

 THE COURT: Right. So, if I understand correctly, there have been multiple publications made to the unknown heirs of Thomas Bob Davis, deceased.
 

 MR. RATCLIFF: Yes, sir.
 

 THE COURT: In this case, other eases, matters before the Oil and Gas Board. Nobody appeared.!
 
 [9]
 
 ]
 

 Mr. RATCLIFF: That’s correct.
 

 THE COURT: How is an interest of the Davis heirs, who don’t exist, going to be affected by not having the State of Mississippi in the case?
 

 ¶ 25. Despite Spectrum Oil’s argument that the State must be a party to the action, Spectrum Oil did nothing to add the State as a party despite the fact that section 11-17-33(3) requires that “all interested parties who are not parties to the petition shall be made defendants and all such defendants shall have been served with process of the courtf.]” As the attorney for Spectrum Oil continued to press the chancellor arguing that the State needed to be added, the chancellor asked the attorney if he had “done anything from the standpoint of contact with the State through the Attorney General’s Office to ascertain their interest in this case?” Spectrum Oil’s attorney answered that he had not. The time for Spectrum Oil to have added the State as a party was when it filed the receivership suit. We will not allow Spectrum Oil to argue an error on appeal which it could have remedied in the chancery court simply by adding the State as a party. Spectrum Oil has done nothing to let the State know of this civil action, and we find that this issue is without merit.
 

 ¶ 26. The final issue Spectrum Oil brings for review comes from the suit to remove a cloud; Spectrum Oil argues that it was error for the chancellor not to allow Spectrum Oil ten days to file a responsive pleading after denying its motion to dismiss. Spectrum Oil claims the summary judgment granted in favor of Trinity USA was premature. Spectrum Oil’s argument is that it should have been allowed ten days under Rule 12 of the Mississippi Rules of Civil Procedure to file a respon
 
 *1223
 
 sive pleading after the chancellor denied its motion to dismiss. We find this argument without merit.
 

 ¶ 27. Rule 12(a) provides that the time for filing a responsive pleading is altered by the filing of a Rule 12(b) motion. If the court denies the motion, the responsive pleading must be served within ten days after the notice of the court’s action. M.R.C.P. 12(a). Rule 12(a) does not require that other proceedings be held in abeyance pending the court’s ruling on the motion or during the ten-day period to file a responsive pleading.
 

 ¶ 28. Rule 56(a) provides that a claimant may file for summary judgment at any time after the expiration of thirty days from the commencement of the action. There is no provision for this motion to be stayed or held in abeyance pending a Rule 12(b) motion. The comments to Rule 56 state that a Rule 56 motion may always be made by the defendant before answering “and under certain circumstances may be made by the plaintiff before the responsive pleading is interposed.” This is one of those circumstances.
 

 ¶ 29. In this case, Trinity USA filed its complaint on June 25, 2008, and its motion for summary judgment on August 12, 2008, more then thirty days later. Spectrum Oil filed its motion to dismiss on July 25, 2008, and there was a hearing held on August 27, 2008, for that motion and Trinity’s motion for a default judgment and summary judgment. At the hearing, the chancellor announced he was “adjudicating that Thomas (Bob) Davis died without descendants.” Thereafter, on September 4, 2008, Spectrum Oil filed its answer and defenses to Trinity USA’s complaint, four days before the chancery court entered the order granting summary judgment to Trinity USA and denying Spectrum Oil’s motion to dismiss. Although Spectrum Oil was not required to file a responsive pleading until its Rule 12(b) motion was ruled upon, the motion for summary judgment was properly filed and considered after the expiration of thirty days from the filing of the complaint, even though no responsive pleading from Spectrum Oil was on file.
 

 ¶ 30. Summary judgment for Trinity USA was not granted because of the lack of a responsive pleading by Spectrum Oil, but because Spectrum Oil did not come forward with any proof of a genuine issue of material fact in response to Trinity USA’s motion for summary judgment. Spectrum Oil was given proper notice and the opportunity to respond to Trinity USA’s motion for summary judgment but did not do so. At the hearing on the motion, Spectrum Oil did not come forward with any witnesses or proof creating a genuine issue of material fact. Finally, Spectrum Oil’s answer contained only general denials that would have had no effect on the propriety of the chancellor’s grant of summary judgment.
 

 CONCLUSION
 

 ¶ 31. We find that the interest Spectrum Oil seeks to hold, that of the descendants of Thomas (Bob) Davis, does not exist; therefore, we find the chancellor did not abuse his discretion when he dissolved the receivership ab initio. Further, we find no error committed by the chancery court for not requiring the State to be a party to the receivership litigation. Finally, we find no error in the grant of summary judgment in favor of Trinity USA before Spectrum Oil responded to the complaint to remove a cloud on title.
 

 ¶ 32. THE JUDGMENTS OF THE CHANCERY COURT OF WAYNE COUNTY ARE AFFIRMED. ALL COSTS OF THESE APPEALS ARE ASSESSED TO THE APPELLANT.
 

 
 *1224
 
 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, ISHEE, ROBERTS AND MAXWELL, JJ„ CONCUR.
 

 [1]
 

 . The petition was filed pursuant to Mississippi Code Annotated section 11-17-33(1) (Rev. 2004) which allows the chancellor to appoint the chancery clerk as “receiver of any mineral interest claimed or owned by any person, or persons, whose whereabouts or identity is unknown,” if the chancery court is satisfied that such person or persons cannot be found after "diligent search and inquiry and that petitioners will suffer loss, damage or injury unless such receiver is appointed.”
 

 [2]
 

 . Section 11-17-33(3) provides: "No receiver shall be appointed under the provisions of this section unless all interested parlies who are not parties to the petition shall be made defendants and all such defendants shall have been served with process of the court provided by law for cases in chancery court.” The subsection then sets out a form for summons by publication.
 

 [3]
 

 .One other son, Ward Davis, had predeceased E.L. Davis and had no children. Accordingly, the descendants of Thomas (Bob) Davis would have owned a one-tenth interest after the death of E.L. Davis in 1937, which would have increased to a one-ninth interest had they survived the death of Lacy Davis in 1949.
 

 [4]
 

 . Part of the record in the appeal from the receivership proceeding is the transcript of a hearing on Spectrum Oil's motion to reopen evidence in the suit to remove a cloud which was filed after the notice of appeal had been filed in that cause. The chancellor’s decision in that case, denying the motion, is not currently before the Court on appeal, except to the extent that the transcript and exhibits from that hearing are part of the record in the receivership proceeding.
 

 [5]
 

 . Several spellings are used in the record among the documents and in the testimony for the first name of Margurete Rouse Davis Haller. We will use ''Margurete” for consistency throughout the opinion.
 

 [6]
 

 . After the death of Thomas (Bob) Davis, Mar-gurete married John Haller. She died in 1929. Her obituary was produced in the record and stated that she was survived by her husband, five brothers, and four sisters; and it gave their names. There is absolutely no mention of any children. Also, census records from the time after Thomas (Bob) Davis’s death contained Margurete’s name, but it did not record the names of any children with the last name of Davis on her entry. Further, her tombstone honors Margurete as "the truest, sweetest wife ever lived” but makes no reference to her having been a mother.
 

 [7]
 

 . That section states: "The receivership, once established, shall continue, unless
 
 dissolved by the court for good cause,
 
 for a period of at least ten (10) years.” Miss.Code Ann. § 11-17-33(5) (Rev.2004) (emphasis added).
 

 [8]
 

 . Rule 19 deals with the joinder of any person needed for a just adjudication of a civil action.
 

 [9]
 

 . During the permitting process for the eighty-acre oil units, notice was given to the unknown heirs of Thomas (Bob) Davis and his wife, Margurete Rouse Davis, to appear before the Mississippi Oil and Gas Board regarding the integration of any interest they might claim in the unit. The notice was published in the
 
 Wayne County News
 
 on June 21 and 28, July 5 and July 12, 2007. No person claiming an interest through Thomas (Bob) Davis appeared before the meeting of the Mississippi Oil and Gas Board.